Argued at Pendleton October 31; reversed December 19, 1933;
rehearing denied March 13, 1934

# HUTCHINSON *v.* STRICKLIN ET AL.

(28 P. (2d) 225)

C. T. *Godwin,* of Baker (Hubbard & Godwin, of Baker, on the brief), for appellant.

*James T. Donald,* of Baker (Hallock, Donald & Banta, of Baker, on the brief), for respondent.

BEAN, J. North Powder river, a branch of Powder river, runs between Baker and Union counties. The water rights of the river and its tributaries were duly adjudicated by the circuit court and confirmed in part by this court in 1915. See *In Re North Powder River,* 75 Or. 83 (144 P. 485, 146 P. 475). The North Powder Milling & Mercantile Company has a mill near the lower part of North Powder river, with a right to 25 second feet of water and a date of relative priority of 1870. This water for power is taken from the river a short distance above the mill and conducted to the mill in a canal. It is then run over the wheel and dropped back into the North Powder river. All of the irrigators, except defendant Peterson, have adjudicated rights to the waters of North Powder river and its tributaries, at points above the head of the mill canal. These we will hereafter refer to as "upper irrigators". A few of these irrigators have rights prior to 1870; some have rights of 1870, and the greater number have rights subsequent to 1870, but prior to 1928, the date of defendant Peterson's right. By the decree of adjudication the milling company was deprived of the right to the use of this water during July and August of each year, the right to this use for these months being confirmed in the upper irrigators and the right to the water for these months is not involved in the present suit.

Plaintiff submits that this suit does not involve a change in use or place of use of the waters available

to the North Powder Milling & Mercantile Company, nor a transfer of any of said waters or any water rights from one tract of land to another tract of land or from one use to another, and asks: "What are the rights of the parties hereto in the event the said North Powder Milling & Mercantile Company should see fit to abandon its water right, in whole or in part, and to discontinue the use of said waters, in whole or in part, and particularly over the period May 15th to November 1st, inclusive of each year hereafter?" And in substance plaintiff contends that Peterson's right, by virtue of his certificate of water right, with the date of relative priority of September 21, 1928, being subsequent and inferior to all the other rights, in the event the 25 second feet of water awarded to the milling company is, for any reason, not used by the milling company during the irrigation season, the same would belong to all of the water users on the river, regardless of the geographical location of their respective points of diversion, and should be allotted to them for beneficial purposes in the order of their dates of relative priority.

The defendant Peterson submits that as the waters used by the milling company have a priority of 1870 and are entitled to 25 second feet and used for power purposes only and then returned to the river, and Peterson, having filed upon the water below the mouth of the canal of the milling company, the water so returned to the river constitutes a new stream out of which Gerald Peterson is the earliest and only appropriator; that the upper irrigators take subject to the rights of Peterson up to his appropriation of 3.09 second feet at the head of his ditch; that it is agreed, for a consideration paid to it, that the milling company will hereafter at all times refrain from demanding the use of

this water from May 15 to November 15 of each year, so that the same may be used by the irrigators; that this constitutes a proposed change in the use and place of use of such waters, as contemplated by section 47-712, Oregon Code 1930.

■ The water used by the milling company, after it has served its purpose and is allowed to escape back into the river, although it is often termed "waste water" becomes a part of the water of the North Powder river, or public waters, and the milling company has no further control over the same. Such water has no earmarks to enable its former possessor to follow it and exercise ownership over it: *Vaughan v. Kolb,* 130 Or. 506 (280 P. 518); *Barker v. Sonner,* 135 Or. 75, 80 (294 P. 1053). The milling company undoubtedly had the right to protect its mill race and it appears they objected rightfully to tapping the mill race for a ditch. That question is not involved in this suit for the reason that Peterson's ditch, which he constructed in 1926, is taken from the North Powder river and not from the mill ditch. Hence the protest of the milling company to the filing for the water below the mill race, to be taken from the river, was of no avail and it is not a matter that is material for consideration.

The water code adopted by the legislature of this state has provided for a complete system for the adjudication of the water rights from different streams and for the recording and regulation of such rights, after the same have been adjudicated. It is disclosed by the stipulation that the nonuse by the milling company in 1931 and 1932 and the use by the upper irrigators was by virtue of an agreement then had between said parties, whereby for a consideration to it paid by plaintiff and others, the milling company did not demand that the state engineer and his assistant turn the

waters down, pursuant to its date of priority. The stipulation recites, in part:

"That said North Powder Milling & Mercantile Company desires, for a consideration to it paid, to make its entire one thousand inches of water, with a priority of 1870, available between May 15 and November 1st of each year in the future to the use of plaintiff and others similarly situated, including any and all other persons entitled to use the same for the irrigation of their several lands * * *."

We have just had under consideration the case of *Broughton v. Stricklin,* this date decided, in which practically the same principle is involved, at least to quite an extent, to the opinion in which case and the authorities there cited reference is hereby made. In the present suit the defendant Peterson is interested only in 3.09 second feet of water from the North Powder river except during the months of July and August of each year. He is enjoined from using the same. As we view the matter, the remaining portion of the water awarded to the milling company is not involved in this suit.

The system adopted by the lawmakers of this state, in the water code and its amendments and other statutes, when the water rights of the several parties on a stream and its tributaries have been adjudicated, may be likened to a network, all the different parts of which form a complete whole. To a certain extent, one right depends upon another, and if a part of the network is displaced it will disarrange and prejudice the other parties, although the part removed is a prior right, with a date of relative priority, earlier than many of the other rights, and it would be something like taking a link out of a chain. The legislature of this state, in its wisdom, has provided for this condition.

■ It is plain and perhaps need not be repeated that the proposed arrangement between the milling company and the upper irrigators would result in a change of the place of use of the milling company's 25 second feet of water and in a change of the character of use. The water used for irrigation is largely consumed and only a small part returns to the river, so that it may be termed a consuming use. The legislative enactment, section 47-712, Oregon Code 1930, declares, inter alia, that all of the water used in this state for any purpose shall remain appurtenant to the premises upon which it is used. No change in use or place of use of any water for any purpose may be made without compliance with the provisions of the act. Upon a proper application a change in the place of use of the water of a stream may be made if, after hearing or examination, the state engineer shall find that the proposed change can be effected without injury to existing rights. It has been uniformly held by the courts of this state that a change in the place of use of water by an appropriator cannot be made if the change injuriously affects others. *In Re North Powder River,* supra.

■ It is clear that the defendant Peterson has a right to 3.09 second feet ''of the waters of the Tail Race of the North Powder Milling & Mercantile Company, which waters have been returned to the North Powder river, a tributary of Powder river, for the purpose of irrigation'', with a date of relative priority of September 21, 1928, pursuant to his certificate of water right for the irrigation of some 210 acres of land. Neither the milling company nor any of the upper irrigators have applied to the state engineer for a change in the place of use, or use of the water awarded to the milling company. If the milling company, for a consideration, is permitted to allow the other irrigators

to use its water during the irrigation season upon lands situated upon the river above the mill, the defendant Peterson's water right would be depreciated and practically destroyed. Such change cannot be made except by strict compliance with the statute: Section 47-712. We reached a similar conclusion in considering the case of *Broughton v. Stricklin,* this day decided, and what we said in the opinion in that case need not be wholly repeated here. In view of the fact that when the water from the milling company's race is returned to Powder river and becomes a part of the public waters of this state, we do not deem it material whether the appropriation made by defendant Peterson is described in the certificate of water right as waters from the tail race of the milling company which have been returned to the North Powder river or whether they are described as the waters of the North Powder river. When such waters are so returned they become a part of the waters of the river.

■ To the valid appropriation of water three elements must exist: (1) Intent manifested to appropriate to some beneficial use existing at the time or contemplated in the future; (2) a diversion from the natural channel by means of a ditch, canal or other structure; (3) the application of it within a reasonable time to some useful industry: *Nevada Ditch Co. v. Bennett,* 30 Or. 59 (45 P. 472, 60 Am. St. Rep. 777); *In re Waters of Deschutes River,* 134 Or. 623, 633 (286 P. 563, 294 P. 1049). The defendant Peterson, it appears, has fulfilled all of the elements necessary to constitute an appropriation, which is evidenced by his certificate of water right.

In 1 Weil on Water Rights (3d Ed.) pp. 316 and 317, the rule generally obtaining is stated as follows:

"Where water is appropriated for the purpose of furnishing power to a mill and after its use in the mill is permitted to flow, undiminished, back into the natural stream, it becomes subject to another appropriation, and when so appropriated the mill appropriator cannot change the character of use or place of diversion in such manner as to injure or deprive the latter appropriator below the mill of his use of the water, nor change to storage or irrigation so as to prevent the continuance of the discharge. Water of a stream used for placer mining purposes and finding its way back into the stream is subject to be appropriated to agricultural uses by farmers on the stream below. Waste water returned to the natural stream from which taken belongs to the appropriators below thereon, whether it comes by percolation, surface or subterranean flow."

The legislature, in adopting the water code and the amendments thereto, has declared a rule which works out so as to be much the same as quoted from Weil on Water Rights.

*In Re North Powder River,* supra, there was involved the right of the North Powder Milling & Mercantile Company to sell 400 miners' inches of water out of its 25 second feet for use during July and August of each year "and as to the right of the purchasers thereof to change the use and point of diversion thereof". Mr. Justice EAKIN, as shown on page 90, said:

"By the holding in Oregon, as above stated, the water is held to be appurtenant to the land to which it is diverted, and the point of diversion cannot be changed if thereby the rights of others are prejudiced; * * * An owner of a water right by prior appropriation cannot change his point of diversion if such a change will injuriously affect other users on the stream nor can he sell it separately from the land either to change the point of diversion, to make a new or different use of it to the injury of other users, * * *."

Mr. Justice EAKIN quoted with approval from *Williams v. Altnow,* 51 Or. 275 (95 P. 200, 97 P. 539), as follows:

"There may therefore be numerous appropriators of water of the same stream, and for use at different times and seasons, or for different purposes.    *    *    * After the rights of subsequent appropriators have attached, the prior appropriator cannot change or extend his use to their injury."

The same rule was adopted in *Hough v. Porter,* 51 Or. 318 (95 P. 732, 98 P. 1083, 102 P. 728).

The North Powder Milling & Mercantile Company proposed to change its point of diversion from a point below to a point above a certain ditch then constructed and used. In passing upon this question, this court said, on page 93 of the North Powder River case:

"*    *    * but, in states in which legislation relating to the use of water has been enacted, it is not the water but the use of it for a particular purpose that is the limit of the right, and, when not needed for that purpose, the next person in priority of time is entitled to it, and a prior appropriator cannot sell it to a stranger to the injury of a subsequent appropriator. This is the case in Colorado, Wyoming, and Montana, and our own state in 1909 adopted the same rule by enacting Section 6668, L. O. L." (Now section 47-712, Oregon Code 1930).

It was further said, as shown on page 94:

"Independently of the statute of 1909, in decisions permitting an appropriator to change the point of diversion or use, the Supreme Court of this state has apparently recognized the doctrine that, if the change injuriously affects others, it cannot be made."

It seems that when that opinion was rendered there was no subsequent appropriator from the North Powder river below the milling company's mill race.

■ Neither the North Powder Milling & Merchantile Company, nor the plaintiff, nor the upper irrigators from the North Powder river, have a right to change the place of use of the 25 second feet of water awarded to the milling company for power purposes to a place of use above the mill canal or change the character of use from one for power purposes, or a nonconsuming use at the mill, to one for the purpose of irrigating the lands of plaintiff and the upper irrigators, which would consume all, or nearly all, of such water, so as to deprive defendant Peterson of the water to which he is entitled by virtue of his appropriation, as evidenced by his water certificate, namely, 3.09 second feet at the head of his ditch, limited to one-eightieth of one cubic foot per second per acre, or its equivalent in case of rotation.

■ If, after satisfying Peterson's needs, the milling company desires to make an arrangement with the upper irrigators for the change of use and place of use of the balance of the 25 second feet awarded to the mill company, and it can be done without prejudice to the rights of others (see *Whited v. Cavin,* 55 Or. 98 (105 P. 396)), a proper application should be made to the state engineer in accordance with the provisions of section 47-712, Oregon Code 1930: *Sears v. Orchards Water Co.,* 115 Or. 291 (236 P. 502, 237 P. 1118), and Oregon cases there cited. The recordation of water rights is a necessary statutory requirement. One of the essential provisions made in section 47-712 is for preserving the record of water rights which have been adjudicated and to require one desiring to change the use to make an application therefor to the state engineer. This requirement seems to have been made in order that the record of adjudicated water rights would not become confused, and therefore be of no practical

efficiency: *In Re Willow Creek,* 74 Or. 592 (144 P. 505, 146 P. 475); *Squaw Creek Irrigation District v. Mamero,* 107 Or. 291, 301 (214 P. 889).

▇▇▇▇ It is stated in the brief of respondent that the milling company is prepared to absolutely abandon its water right over the period from April 15 to October 1 of each year and allow the waters so abandoned to be used by those entitled to receive the same in accordance with their dates of relative priority in order to enable farmers owning about 18,000 acres of land to produce grain. However the arrangement between the milling company and the irrigators is designated, the transfer proposed will benefit the upper irrigators and this is attempted to be done for a consideration to be paid. We would not term it an abandonment. The right to the use of the water cannot be deemed forfeited by nonuser short of the period of time prescribed by the statute, and nonuser will not effect an abandonment in the absence of proof of intent to abandon: *Borman v. Blackmon,* 60 Or. 304 (118 P. 848); *Hough v. Porter,* supra; *In Re Willow Creek,* supra; *Watts v. Spencer,* 51 Or. 262 (94 P. 39); *Dober v. Ukase Investment Co.,* 139 Or. 626 (10 P. (2d) 356).

In *Stephens v. Mansfield,* 11 Cal. 363, cited by plaintiff, the syllabus reads:

"Abandonment must be made by the owner, without being pressed by any duty, necessity or utility to himself, but simply because he desires no longer to possess the thing; and further, it must be made without any desire that any other person shall acquire the same."

It is contended by the learned counsel for plaintiff that the "milling company's abandonment is not made in the interests or for the benefit of any particular person or persons nor for any consideration which in

any manner could be construed as evidencing a sale''. Citing *Stephens v. Mansfield,* supra; *Richardson v. McNulty,* 24 Cal. 343; *Watts v. Spencer,* supra.

Without indicating whether it is necessary to determine that the arrangement desired to be made by the milling company with plaintiff, and others, is a sale, we are constrained to believe that the arrangement proposed to be made for the milling company to release its right to the water for certain times for the benefit of the upper irrigators is practically a sale. As previously expressed, we do not find that there has been any abandonment, in the strict sense of the word, of the milling company's right to the water. We fail to see that there is any difference between releasing the right of the milling company or permitting the upper irrigators to use the water for a. consideration where there are several persons who may be interested enough to pay the consideration, or whether there is one particular person. The consideration to be paid is not definitely shown by the stipulation and the contract, or proposed contract, referred to between the milling company and the plaintiff and others, is not an exhibit in the case.

The rights of the parties in these waters in the event of abandonment by the milling company is discussed. We do not deem it appropriate for this court to pass upon a condition of abandonment of the water of the milling company, when such a condition does not appear in the record.

If, without interfering with the water rights of Peterson or after his rights have been supplied, the milling company, for a short period of time, does not desire or need to use all or any part of the water to which it is entitled, no one can object to the arrangement, in the administration or parceling of the water

to the different water users by the water master, of distributing such water "intermittently" to the different water users, in accordance with their respective rights. This is purely a matter of administration. We assume, without deciding, that the rights, as adjudicated, of neither the milling company nor the upper irrigators would be changed or disturbed thereby.

It follows that the decree of the lower court is reversed and the injunction against defendants is dissolved; that defendant Gerald Peterson be declared to be entitled to the right to the use of the waters of North Powder river, a tributary of Powder river, for the purpose of irrigating the lands described in his water right certificate, except during the months of July and August of each year. Such right is limited to the amount actually and beneficially used for said purposes, not to exceed 3.09 cubic feet per second, and is limited to one eightieth of one cubic foot per second per acre or its equivalent in case of rotation, with a date of relative priority of September 21, 1928, the point of diversion being located in the NE ¼ SE ¼ of Section 22, Township 6 S., Range 39 E. W. M., such right to be in accordance with the water right certificate issued to said defendant by the state engineer, of date November 25, 1931, and in accordance with this opinion.

CAMPBELL and BAILEY, JJ., not sitting.