Argued and submitted December 1, 1980, affirmed March 31, 1981

CRANDALL et al,
*Appellants-Respondents,*

*v.*

WATER RESOURCES DEPARTMENT,
*Respondent,*
ROGUE RIVER VALLEY
IRRIGATION DISTRICT et al,
*Respondents-Petitioners.*

(CA 12089, SC 27034)

626 P2d 877

Frank J. Van Dyke and H. Dewey Wilson, Medford, argued the cause for petitioners Rogue River Valley Irrigation District and Medford Irrigation District. With them on the briefs were John L. DuBay and Douglass H. Schmor, Medford.

William H. Ferguson, Medford, argued the cause for respondents Crandall. With him on the briefs was Grant, Ferguson & Carter, Medford.

Respondent Water Resources Department made no appearance.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Campbell, Justices.

CAMPBELL, J.

## CAMPBELL, J.

The director of Water Resources, upon the request of the Rogue River Valley Irrigation District and the Medford Irrigation District, commenced this proceeding under ORS 540.610 to 540.650 to cancel a water right from Little Butte Creek for power purposes at the Daley Flour Mill, also known as the Butte Creek Mill, at Eagle Point, Oregon. The water right is for the appropriation of not to exceed 40 cubic feet of water per second, with a priority of 1872. The Daley Flour Mill is owned by Peter B. Crandall and Cora D. Crandall.

The director ordered that the right to use 15.6 cubic feet per second of the water from Little Butte Creek be cancelled. As to the remaining 24.4 cubic feet per second, the director ordered that a new water right certificate be issued with a priority subsequent to all existing rights.

The Crandalls filed a petition for judicial review under ORS 183.480 in the Court of Appeals,[1] contending that the evidence did not support the director's finding that there had been a forfeiture of the right to use 15.6 cubic feet per second and that the director had no authority to change the priority date as to the remaining 24.4 cubic feet per second. That court affirmed that portion of the director's order which held that 15.6 cubic feet per second was forfeited and reversed that portion which changed the priority date of the remaining 24.4 cubic feet per second.[2]

The irrigation districts have petitioned this court for review, contending that the findings of fact entered by the director require the entry of a modified decree, further reducing the water right for the months of July, August and September from 24.4 to 22.0 cubic feet per second. We allowed review and affirm the Court of Appeals.

The water right for the Daley Flour Mill was adjudicated by the circuit court in a proceeding entitled *In*

---

[1] The proceedings before the Director of Water Resources was entitled "In the Matter of a Water Right in the Name of George Putnam." After the Crandalls had filed their petition for judicial review, the Court of Appeals allowed the irrigation districts to intervene.

[2] The Court of Appeals scope of review was to determine if there was substantial evidence to support the director's findings of fact. ORS 183.482. *See Crumpton v. Dept. of Water Resources,* 28 Or App 423, 559 P2d 927 (1977).

*the Matter of the Determination of the Relative Rights to the Use of the Waters of Little Butte Creek and its Tributaries, a tributary of the Rogue River, Jackson County, Oregon.* The certificate of water right was issued on April 28, 1950, in the name of George Putnam for 40 cubic feet per second, with a priority date of 1872, pursuant to the circuit court's decree entered on August 15, 1949.

Putnam bought the mill and the property on which it is located in 1933. A water-driven turbine turns a drive shaft which furnishes direct power for the mill machinery. The water for the Daley Mill is diverted from Little Butte Creek approximately 1,200 feet upstream from the turbine. The Putnams used the mill to hammer hay and feed until 1942 when they built cold storage lockers. The refrigeration compression pumps are run by the power from the turbine. In 1945 or 1946 the grindstone was rebuilt and the mill operators started grinding flour. The grain is processed, cleaned, and elevated to storage on the upper floors of the mill prior to grinding. A series of shafts and belts distribute the power from the turbine throughout the mill building. In 1972 the Putnam family sold the mill to the Crandalls.

The irrigation districts also use water from Little Butte Creek. Their water rights have a priority subsequent to 1872. The water for the irrigation districts is diverted from Little Butte Creek eight to ten miles upstream from the Daley Mill. The water available in Little Butte Creek is the lowest in the months of July, August and September. This period of time is the height of the irrigation season when the demand for water is the greatest.

The director of Water Resources held a hearing pursuant to ORS 540.641. Thereafter, he entered findings of fact and conclusions of law wherein he correctly identified the question to be decided as:

"The sole issue here is whether or not the statutory abandonment or forfeiture for failure to use the water for five successive years has or has not taken place. If it has, the right was lost at that time and the water reverted to the public. If it wasn't, the right to the use of the water must be affirmed."

An engineer from the Water Resources Department examined the turbine and measured its hydraulic

capacity while in full operation. As a result of this examination and measurement, the following finding of fact was entered:

> "It is clear that 24.4 cubic feet per second is an adequate flow of water to be passed through the turbine to meet the maximum power needs of the system as installed."

The director found that the same turbine had been used at the mill since its purchase by the Putnams and that:

> "Since reconstruction of the power system by the Putnam family in the 1930's up to the date of the hearing, the beneficial use of water has been not more than 24.4 cubic feet per second, the present maximum hydraulic capacity of the turbine with the compressors, elevators, grindstone, scourer, and scalper in operation."

As to the flow of the water of Little Butte Creek during the critical months of July, August and September, the director found:[3]

> "David Hendrix, watermaster for the area since 1951, testified that fluctuation was very spasmodic and would vary several cubic feet per second throughout the day when the *average* flow in Little Butte Creek at the Butte Creek Mill diversion was about 20 to 22 cubic feet per second. * * * Mr. Hendrix testified that, based on his 25 years experience as watermaster, measuring and distributing the waters of Little Butte Creek, the flow of Little Butte Creek at the highway bridge just below Eagle Point, would be about equal to or slightly more than the available flow at the Butte Creek Mill diversion." (Emphasis added.)

To show the relationship of the stream flow between the diversion point at the mill in Eagle Point and the point at the highway bridge just below Eagle Point, the director entered in his findings the records of the stream flows at the highway bridge collected and maintained by the US Geological Survey showing monthly *averages* of the daily measurements.

---

[3] This finding does not comply with the requirements of ORS 183.470, but none of the parties have objected.

| Year | July | August | September |
|------|------|--------|-----------|
| 1946 | 14.9 cfs | 15.0 cfs | 18.5 cfs |
| 1947 | 19.6 cfs | 18.3 cfs | 18.9 cfs |
| 1948 | 25.0 cfs | 23.2 cfs | 28.7 cfs |
| 1949 | 19.0 cfs | 20.0 cfs | 24.3 cfs |
| 1950 | 21.4 cfs | 24.1 cfs | 27.6 cfs[4] |

As to the stream flow of Little Butte Creek the director also found:

"The records of flow released past the Medford and Rogue River Valley Irrigation Districts' diversion works for a 14 year period, 1959 to 1974, with records missing for 1971 and 1972, *averaged* 19.7 cubic feet per second for the months of July, August and September."[5] (Emphasis added)

In effect, the irrigation districts argue that the director's findings of fact support the proposition that during a five-year period between 1951 and 1973, the Daley Mill did not use in excess of 22 cubic feet of water per second in the months of July, August and September because that was all the water available at the mill's point of diversion and, therefore, the Crandalls' water right should be reduced from 24.4 cfs to 22.0 cfs for those months.

---

[4] The US Geological Survey only kept records for the years of 1946 through 1950.

[5] These records were kept by the Water Resources Department under the supervision of the watermaster, David Hendrix. The height of the water gauge was measured once a day, the flow of water was computed in cubic feet per second and recorded. The 19.7 cubic feet referred to in the director's findings is the average of the daily measurements. These were the only recorded daily measurements of the stream flow of Little Butte Creek, except for the US Geological Survey's measurements at the highway bridge near Eagle Point for the years 1946-1950.

The diversion works of the Medford Irrigation District and the Rogue River Valley Irrigation District is eight to ten miles upstream from the diversion point of the Daley Flour or Butte Creek Mill. David Hendrix testified that during this eight to ten miles stretch of the stream there were eight different ditch diversions, including the Little Butte Irrigation Company which has a water right for 16 1/2 cubic feet per second. He also testified "there are also several small pumping stations along the way." To balance the water removed from the stream, there are "return flows" from the irrigation water and tributaries, including a stream named "Long Branch" which, for short periods of time, may have flows of 5 or 6 cubic feet per second.

During the hearing the Crandalls continually objected to the evidence as to the amount of water released upstream by the irrigation districts on the grounds of relevance, claiming it was remote because of the distance involved. Because of the result we reach in this case, we need not consider that question.

The Crandalls counter by pointing out that the measurements of available water referred to in the director's findings are based upon monthly *averages* of daily measurements and, therefore, there is no substantial proof in the record that the Daley Mill did not use 24.4 cubic feet of water per second for a period of five successive years.

The authority of the director of Water Resources to cancel water rights for nonuse is derived from ORS 540.610(1):

> "Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state. Whenever the owner of a perfected and developed water right ceases or fails to use the water appropriated for a period of five successive years, the right to use shall cease, and the failure to use shall be conclusively presumed to be an abandonment of water right. * * *"

The irrigation companies on oral argument in this court conceded that the director of Water Resources had the burden of proof to establish by a preponderance of the evidence that the Crandalls had ceased or failed to use the water appropriated for a period of five successive years. ORS 41.210.

Proof that during a particular period of five successive years there was only available for use by the operators of the Daley Mill an *average* of 22 cubic feet per second is not proof that the mill operators did not on occasion use water in the amount of 24.4 cubic feet per second, thus breaking the chain of five successive years. This is demonstrated by examining the table previously set forth in this opinion, showing the stream flows recorded at the highway bridge just below Eagle Point by the US Geological Survey for the months of July, August and September during the years of 1946 through 1950. The average daily measurement for the table is 21.2 cubic feet per second, yet for three of the months the daily average exceeded 24.4 cfs. It should also be noted that for the year of 1948 the daily average exceeded 25.6 cfs.[6]

---

[6] The Court of Appeals, citing *Abel v. Mack*, 131 Or 586, 283 P 8 (1929), held that the director could not go behind the circuit court decree of August 15, 1949, to prove nonuse. We agree. The measurements made by the US Geological Survey

The director found that the daily measurements of stream flow released eight to ten miles upstream from the Daley Mill at the diversion point of the irrigation companies *averaged* 19.7 cubic feet per second during the months of July, August and September for the years of 1959 to 1974, with records missing for 1971 and 1972. The records were not included in the findings, but were received in evidence and are a part of the record. An examination of the recorded daily averages show that for nine months during that period of time the stream flow was equal to or exceeded 24.4 cfs. The records also show that there was a five successive year period for the months of July and August of 1959 through 1963 when the averages of the daily stream flow measurements did not exceed 21.0 cfs. However, a closer examination of that period shows that several individual daily measurements exceeded 24.4 cfs.

As the Court of Appeals found, the demonstrated maximum capacity of the turbine was substantial evidence to support the director in reducing the Crandalls' water right from 40 cfs to 24.4 cfs. However, the findings that the *average* stream flow available for use at the Daley Mill was 20.0 to 22.0 cfs during the months of July, August and September is not substantial evidence of nonuse for a successive five-year period, requiring a further reduction in the water right.

Affirmed.

---

for the years of 1946-1950 are relevant to this proceeding and are included in the director's findings to show that the stream flow at the Daley Mill diversion point and at the highway bridge just below Eagle Point were about equal.