Argued and submitted September 4, remanded to Director of Water Resources
December 10, 1985

RENCKEN,
*Petitioner on Review,*

*v.*

YOUNG,
*Respondent on Review.*

(PC 84-1; CA A33463; SC S31732)

711 P2d 954

William D. Cramer, Burns, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Cramer & Pinkerton, Burns, and William A. Galbreath, Milton-Freewater.

Donna Parton Garventa, Assistant Attorney General, Salem, argued the cause and filed the briefs for respondent on review. With her on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

CAMPBELL, J.

## CAMPBELL, J.

This is a review of a decision by the Court of Appeals which affirmed an order of the Director of the Water Resources Department cancelling the bulk of a water right owned by Rudolph G. Rencken. The water right had granted Rencken the use of the water from the East Branch of Mud Creek to irrigate 10 acres in Umatilla County. Following an administrative hearing, the Director found that Rencken had not used the water for "five successive years" as required by ORS 540.610(1) and cancelled the right for irrigation except for .1 acre. Rencken filed a petition for judicial review with the Court of Appeals which affirmed without opinion. 72 Or App 781, 697 P2d 578 (1985). We remand to the Director with instructions to re-evaluate the evidence in light of this opinion.

Two of the chief issues in this case involve the interpretation of ORS 540.610(1) which provides:

"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state. Whenever the owner of a perfected and developed water right ceases or fails to use the water appropriated for a period of five successive years, the right to use shall cease, and the failure to use shall be conclusively presumed to be an abandonment of water right. Thereafter the water which was the subject of use under such water right shall revert to the public and become again the subject of appropriation in the manner provided by law, subject to existing priorities."

On November 28, 1910, the Circuit Court for Umatilla County entered a decree "IN THE MATTER OF THE DETERMINATION OF THE RELATIVE RIGHTS TO THE WATERS OF THE EAST BRANCH OF MUD CREEK." The decree granted to Rencken's grandfather and predecessor in interest .18 cubic feet per second of water to be used on the 10 acres. The water right had a priority of 1888 and designated the use as:

> "Irrigation
> & domestic
> Stock
> Mar to Oct."

The decree set forth opposite the name of each

appropriator of water from the East Branch of Mud Creek various information which included:

> "* * * the number of acres to which such water is applied and is now limited, with the season during which such water is used for irrigation and *to which such use is now limited* * * * ." (Emphasis added.)

On November 29, 1911, the State Engineer issued a certificate of water right confirming the rights granted by the above-described decree. The certificate contains this recital: "(Irrigation season: From March to October of each year.)"

Rudolph G. Rencken started to farm the subject 10 acres in 1955. Prior to 1978 Rencken raised alfalfa, soybeans and wheat on the land. In 1978 he used the water from the East Branch of Mud Creek to irrigate a crop of corn by use of small ditches. In 1979, 1980, 1981 and 1982, he did not use the water granted by the right except to irrigate a garden of approximately .1 acre.

The factual controversy in this case concerns the year of 1983. During that year, three cuttings of alfalfa hay were harvested from the land.[1] During the fall season of 1983, Rencken excavated a small pond or sump near the East Branch of Mud Creek to receive and hold water from the channel of the stream. He then purchased and installed an electric centrifugal pump to pump the water from the sump into the pipeline serving the sprinkler irrigation system. The pump was purchased in September 1983 and a permit which authorized the connection of the electricity to it was obtained from the State of Oregon on October 4, 1983.

Witnesses on Rencken's behalf testified that after the pump was installed, the alfalfa growing on the 10 acres was irrigated in late October or November 1983, with water from the East Branch of Mud Creek. The assistant water master for the area observed the subject land being irrigated with water from the same source on November 21, 1983. Two neighboring orchard owners, who were the proponents of the cancellation and interested witnesses, testified that the irrigation of the

---

[1] Until after the third cutting of hay, the alfalfa was irrigated by a sprinkler irrigation system using ground water pumped from a well. The use of ground water from the well is not relevant to this case.

subject 10 acres with water from the East Branch of Mud Creek did not commence until after the end of October 1983.

The Water Resources Director found that water from the East Branch of Mud Creek was not used by Rencken in 1983 to irrigate the 10 acres until after the end of the irrigation season on October 31. The Director's ultimate findings of fact in part were:

"With the exception of the continued use of water from the East Branch of Mud Creek for irrigation of a garden area of approximately 0.1 acre in area, water from the East Branch of Mud Creek was not diverted and used for irrigation under the provisions of the water right in question during the years of 1979, 1980, 1981, 1982 and 1983, being a period of five successive years of nonuse.[2]

The Director then ordered that the right to use the water from the East Branch of Mud Creek for irrigation purposes be cancelled as to 9.9 acres.

The principal issues in this case are: (1) Does ORS 540.610(1) provide for the "abandonment" or the "forfeiture" of water rights after a failure to use; (2) Does the term "five successive years" in ORS 540.610(1) mean "five successive calendar years" or "five successive irrigation seasons," and (3) Did the Director properly allocate the burden of proof in evaluating the evidence?[3]

*"Abandonment" or "Forfeiture"*

The distinction between "abandonment" and "forfeiture" is important to the correct determination of this case. The Director, relying upon *Withers et al. v. Reed,* 194 Or 541, 558, 243 P2d 283 (1952), held that ORS 540.610(1) is a

---

[2] The balance of the Director's ultimate findings of fact provided:

"The testimony adduced does not establish the question of fact as to use or nonuse of water from the East Branch of Mud Creek for the purposes of domestic and stock water."

[3] There is no issue of "beneficial use" as required by ORS 540.610(1) in this case. The Director found that Rencken, by irrigating the subject 10 acres in November 1983, was applying the water to beneficial use. He specifically found:

"Fall irrigation on alfalfa land after the final cutting for that year has been harvested is a common practice of the area and is recognized as a beneficial use of water in that area of the state."

forfeiture statute. However, if ORS 540.610(1) is an abandonment statute and an intent to abandon the water right is required, the Director might have reached a different result because there is uncontradicted evidence in the record that before the end of the fifth irrigation season, Rencken dug a sump and bought an electrical pump to use the water from the East Branch of Mud Creek.

ORS 540.610(1) was passed by the Oregon Legislature in 1913 as Chapter 279. The language of the statute has remained the same since its enactment except for minor editorial changes. *See* Or Laws 1920, ch 8, § 5776; 3 Oregon Code Annotated (1930) § 47-901; OLCA § 116-437 (Oregon Compiled Laws Annotated). Oregon cases decided after the enactment of this statute have not always drawn a clear distinction between abandonment and forfeiture.

*Broughton v. Stricklin,* 146 Or 259, 276, 28 P2d 219, 30 P2d 332 (1934), involved the change of the place of use of water from the Deschutes River. This court said:

"The proposition to change the place of use of water from Cline Falls to the district * * * is not an abandonment of such water. To constitute an abandonment of a water right there must be a concurrence of an intention to abandon and an actual failure in its use for the statutory period."

*Hutchinson v. Stricklin,* 146 Or 285, 301, 28 P2d 225 (1934), involved an agreement wherein a milling company in Baker County for a valuable consideration agreed not to demand the use of its 1870 priority water so that it would be available to upstream users. It was held:

"We would not term it an abandonment. The right to the use of the water cannot be deemed forfeited by nonuser short of the period of time prescribed by the statute, and nonuser will not effect an abandonment in the absence of proof of intent to abandon: * * * *Dober v. Ukase Investment Co.,* 139 Or 626 (10 P.(2d) 356)."

*Tudor v. Jaca, et al.,* 178 Or 126, 164 P2d 680, 165 P2d 770 (1946), was a suit to quiet title to the use of the waters of Crooked Creek, a tributary of the Owyhee River in Malheur County. It was claimed that the respondent had lost the right to irrigate the Loveland field by either abandonment or forfeiture by failing to use the water for more than five years, citing OCLA § 116-437 (ORS 540.610(1)). This court made the

following distinction between "abandonment" and "forfeiture":

> "Abandonment, as applied to an appropriation of water, is an intentional relinquishment of a known right. *Pringle Falls Electric Power and Water Co. v. Patterson,* 65 Or 474, 128 P 820, 132 P 527. The evidence, in our opinion, does not indicate that there was ever any intention to abandon the Loveland field rights, * * *. Forfeiture is 'the involuntary or forced loss of the (water) right, caused by the failure of the appropriator or owner to do or perform some act required by the statute,' Kinney, Irrigation, 2 ed., section 1118." 178 Or at 151.

This court went on to hold that there was no forfeiture under the facts of the case.

In *Withers et al. v. Reed, supra,* the sole question was whether OCLA § 116-437, now ORS 540.610(1), applied to the State of Oregon's ownership of lands. In 1928, Robert C. Lowe mortgaged 40 acres of land in Harney County to an agency of the State of Oregon to secure a veteran's loan. In 1932, Lowe defaulted on the loan and conveyed the land to the state in lieu of foreclosure. At the time of the conveyance, Lowe had a right to irrigate the land with waters from Mill Creek and Coffee Pot Creek. The state held title to the land until 1945 when it conveyed the 40 acres to defendant Reed's predecessor in interest. During the period of 13 years when the state owned the land, it was not irrigated, although water was available for that purpose. The circuit court affirmed the state engineer's order cancelling the water rights. Justice Lusk, writing for this court, held that OCLA § 116-437, now ORS 540.610(1), applied to the state ownership of lands and affirmed the circuit court. The 4-3 opinion of the court said at page 558:

> "Under the statute in question, failure of 'the owner of a perfected and developed water right' to use the water appropriated for a period of five successive years works a *forfeiture* of the right, not for the benefit of any individual as in the case of an ordinary statute of limitations—which this is not—but for the benefit of the public, to the end that the 'water right shall revert to the public and become again the subject of appropriation in the manner provided by law.' Here again, is a statement as clear as words can make it of the public policy behind the statute."[4] (Emphasis added.)

---

[4] The court split 4-3 on the question of whether OCLA § 116-437 (now ORS 540.610(1)) applied to the State of Oregon's ownership of lands. The dissent did not take issue with the majority's interpretation that the statute provided for a forfeiture.

In a 1965 case, *Day v. Hill,* 241 Or 507, 508, 406 P2d 148, the court quoted ORS 540.610(1) and held "that the plaintiffs' predecessor *forfeited* by nonuse any right of appropriation he had." (Emphasis added.)

*Bausch v. Myers,* 273 Or 376, 541 P2d 817 (1975), was an action to recover damages for misrepresentation involving the sale of a ranch in Douglas County. When the ranch was sold in 1967, the seller represented to the plaintiffs that there were 27 acres of water rights. In 1972, the State Engineer found that there had been a non-use of a portion of the water rights during the period of 1962-66, inclusive, and cancelled the rights for 20.4 acres. This court found that the representation was recklessly made. It quoted ORS 540.610(1) and made the following statement at page 380:

> "Urbanites might not know that water rights are conclusively presumed abandoned for failure to use for five successive years. This law, however, is common knowledge among all in Oregon who are dependent upon an adequate supply of water for irrigation. We believe it is equally well known that five years of nonuse is a conclusive abandonment whether proceedings before the State Engineer are brought immediately after the five years of nonuse or 10 or 15 years later. For an example, *see Withers v. Reed,* 194 Or 541, 243 P2d 283 (1952)."

In the *Bausch* case this court did not use the term "forfeiture," but did refer to *Withers et al. v. Reed, supra,* which was based upon the proposition that ORS 540.610(1) is a forfeiture statute.

*Crandall v. Water Resources Dept.,* 290 Or 771, 626 P2d 877 (1981), was the review of a proceeding under ORS 540.610 to 540.650 to cancel a water right from Little Butte Creek for power purposes at the Daley Flour Mill at Eagle Point. We said that the Director of Water Resources in his findings of fact and conclusions of law had "correctly identified the question" to be decided:

> " 'The sole issue here is whether or not the *statutory abandonment* or *forfeiture* for failure to use the water for five successive years has or has not taken place. If it has, the right was lost at that time and the water reverted to the public. If it wasn't, the right to the use of the water must be affirmed.' "
> 290 Or at 774 (emphasis added).

None of the Oregon cases which consider the "abandonment-forfeiture" question refers to ORS 540.631, which in part provides:

"Whenever it appears to the satisfaction of the Water Resources Director * * * that a perfected and developed water right has been *abandoned* as provided in ORS 540.610, the director may initiate proceedings for the cancellation of such water right * * *." (Emphasis added.)

Two law professors and one attorney general agree that ORS 540.610(1) is a forfeiture statute. Professor Chapin D. Clark in Survey of Oregon's Water Laws (reprinted and updated by the Oregon Law Institute (August 1983)) at page 153 refers to ORS 540.610(1): "This is a statutory declaration that failure to use a water right for five successive years shall cause the right to be forfeited. Intent to abandon, actual or inferred, is not an element of forfeiture." In a footnote the same author writes: "ORS 540.631 refers to water rights abandoned as provided in [ORS 549.610(1)], but it is clear that a conclusive presumption of abandonment creates in effect a statutory forfeiture." 157 n. 11.

1942-44 Opinions of Attorney General 48 comments on OCLA § 116-437 (now ORS 540.610(1)):

"Although the statute employs the word 'abandonment', it clearly contemplates an involuntary forfeiture through nonuser rather than a voluntary abandonment. An intent to relinquish the right is, of course, an essential element of abandonment, but the forfeiture provided by section 116-437 results without regard to the owner's intent."[5]

2 Hutchins, Water Rights Law in the Nineteen Western States (1974), contains the following statement concerning ORS 540.610(1) on page 320:

"* * * The controlling sentence in the Oregon statute reads: 'Whenever the owner of a perfected and developed water right ceases or fails to use the water appropriated for a period of five

---

[5] 1942-44 Opinions of the Attorney General 48 continued its comments on OCLA 116-437 (now ORS 540.610(1)) as follows:

"In *Hammond v. Johnson*, 66 Pac (2d) 894, 899 (Utah, 1937), the court, in distinguishing abandonment and statutory forfeiture under an analogous statute, stated as follows:

" 'A forfeiture for nonuser during the statutory time may occur despite a specific intent not to surrender the right. It is based, not upon an act done, or an intent had, but upon a failure to use the right for the statutory time.' "

successive years, the right to use shall cease, and the failure to use shall be *conclusively presumed* to be an abandonment of water right.' [Emphasis in original.] This goes beyond the Kansas Legislature's 'shall be deemed abandoned' and makes it clear that if 'conclusively presumed' means anything at all, it completely rules out the element of intent. Its ingredients are those of forfeiture - nonuse and lapse of time. Although this may purport to be an abandonment statute, it is in effect a forfeiture statute." (Footnote omitted.)

■ Since the 1952 case of *Withers et al. v. Reed, supra,* this court has consistently indicated that ORS 540.610(1) is a forfeiture statute. The above-cited legal literature agrees with the conclusion.[6] We reaffirm *Withers et al. v. Reed, supra.*

Neither *Broughton v. Stricklin, supra,* nor *Hutchinson v. Stricklin, supra,* referred to Oregon Code Annotated § 47-901, which was a predecessor statute of ORS 540.610(1), even though the statute had been passed in 1913 and at the time of those opinions had remained unchanged for 21 years. Both cases can be read to say that an intent to abandon must concur with the failure to use the water for a period of five years. If *Broughton v. Stricklin, supra,* and *Hutchinson v. Stricklin, supra,* were not overruled by *Withers et al. v. Reed, supra,* we now overrule the portions of them that are inconsistent with ORS 540.610(1) and this opinion.[7]

---

[6] The only exception that we have found is Note, *Loss and Abandonment of Appropriative Rights,* 3 Willamette L J 336, 343 (1965), which states: "While Ore. Rev. Stat. § 540.610, by its terms, would allow loss of an appropriated right by nonuse alone, case law would indicate that an intent to abandon must also be found before the court would declare a right to have been lost." There is no specific citation to support the above statement. The article in a different paragraph does cite *Broughton v. Stricklin,* 146 Or 259, 28 P2d 219, 30 P2d 332 (1934), and *Hutchinson v. Stricklin,* 146 Or 285, 28 P2d 225 (1934). It does not cite *Withers et al. v. Reed,* 194 Or 541, 243 P2d 283 (1952).

[7] 2 Hutchins, Water Rights in the Nineteen Western States (1974), at page 320 makes the following observation about *Broughton v. Stricklin, supra* note 6, and *Hutchinson v. Stricklin, supra* note 6:

"In two decisions rendered in the early 1930's, the Oregon Supreme Court made some confusing statements about abandonment and the statutory nonuse period. Since the priorities under discussion in these cases—1892 in the *Broughton* case and 1870 in the *Hutchinson* case—long antedated the 1913 Oregon statute, with its positive declaration that nonuse for 5 years shall be *conclusively presumed* to be an abandonment of the water right, it may be presumed that the court was not thinking about the 1913 statute. However, by confusing actual abandonment as construed generally in the West with statutory forfeiture for a designated period of years, the general rule that abandonment can take place instantly upon

*"Five Successive Calendar Years" or "Five Successive Irrigation Seasons"?*

Next we are requested to determine if the term "five successive years" in ORS 540.610(1) means "five successive calendar years" or "five successive irrigation seasons."

If the findings of the Director of Water Resources are correct, they support the conclusion that Rencken did not use the water from the East Branch of Mud Creek to irrigate the subject 10 acres during "five successive irrigation seasons" but did use it during "five successive calendar years." The undisputed use of the water in November 1983 was not within the irrigation season, but was within the calendar year.

Rencken contends that ORS 540.610(1) refers to calendar years. Therefore, even if the Director found that Rencken did not use the water during the fifth irrigation season which ended on October 31, 1983, his undisputed use of the water in November 1983 was within the fifth calendar year and the terms of the statute. Under Rencken's position, this proceeding should be dismissed.

Even if we should decide that ORS 540.610(1) refers to "calendar years" and not "irrigation seasons," it does not help Rencken. His water right from the East Branch of Mud Creek was limited for irrigation to a season from March to October. Rencken's use of the water in November was not "the water appropriated" under the circuit court decree and referred to in ORS 540.610(1). If he had a right to use the water from the East Branch of Mud Creek in November to irrigate the 10 acres, it would have to come from some other legal source.

If the description of the water right in the decree as "Irrigation & domestic Stock Mar to Oct." and the certificate of water rights as "Irrigation season: from March to October of each year" stood alone, it might be argued that the descriptions referred only to the average or normal season and were not definitive. However, the decree of November 18, 1910

concurrence of nonuse and intent to abandon—and therefore at any time prior to expiration of the statutory period—was disregarded." (Footnote omitted; emphasis in original.)

strictly limits the irrigation season with the following language:

> "* * * with the season during which such water is used for irrigation and *to which such use is now limited.* * * *" (Emphasis added.)

■ The decree of the circuit court in confirming the water right controls the certificate of water right issued at a subsequent date by an administrative agency.[8]

All water within the State of Oregon from all sources of water supply belongs to the public. ORS 537.110. When Rencken's predecessor appropriated the water in question under the Water Appropriation Act of 1909, he obtained a vested property right which was appurtenant to the subject 10 acres. *Skinner v. Jordan Val. Irr. Dist.,* 137 Or 480, 491, 300 P 499, 3 P2d 534 (1931). However, it was a usufructuary estate subject to being divested by forfeiture. 2 Kinney on Irrigation and Water Rights 1326, 2020 (2d ed 1912).[9]

Case law in Oregon gives courts the authority to limit the irrigation seasons in a decree. "An appropriation of water is limited in every case, in quantity as well as for the period of time for which the appropriation is made." *Davis v. Chamberlain,* 51 Or 304, 314, 98 P 154 (1908) (citations omitted). "It is also a well-authenticated principle that appropriations may be measured by the period or time of use, as well as by the quantity employed." McPhee v. Kelsey, 44 Or 193, 201, 74 P 401, 75 P 713 (1903).

One of the reasons for the rule set out in the *Davis* and *McPhee* cases is demonstrated by *Oliver v. Skinner and Lodge,* 190 Or 423, 442, 226 P2d 507 (1951): "A prior appropriation of a definite amount of water may be made, limited to use during a definite period of time, and a subsequent appropriator may appropriate a like quantity of water from the same

---

[8] 2 Hutchins, *supra* note 7, at 457, (citing *Pacific Live Stock Co. v. Lewis,* 241 US 440, 451, 36 S Ct 637, 60 L Ed 1084 (1916)).

[9] "[W]aters of a natural stream or other natural body of water are not susceptible of absolute ownership as specific tangible property. Prior to the segregation of water from the general source, the proprietary right is usufructuary in character." 1 Clark (ed.), Water and Water Rights 349 (1967) (footnotes omitted). "According to the modern accepted doctrine, it is the use of water, and not the water itself, in which one acquires property in general." *Sherred v. City of Baker,* 63 Or 28, 39, 125 P 826 (1912).

source, for use during another period."[10]

■ We hold that Rencken's use of the water from the East Branch of Mud Creek during November 1983 was not "appropriated water" within the limits of his adjudicated right. We are dealing with a decree that specifically limits the use of the water for irrigation from March to October of each year—other decrees may contain different provisions. We express no opinion as to Rencken's claimed use of the water in October 1983—that is a disputed question of fact to be determined by the Director of Water Resources.

*Did the Director properly allocate the burden of proof in evaluating the evidence?*

The Director's findings of fact in part contain the following statement:

> "The initial burden is on the proponents of cancellation to show that a period of five successive years of nonuse of water under the terms of the water right in question has occurred. With the exception of that portion of the water right in question appurtenant to the 0.1 acre garden area, proponents did meet that burden in regard to the use of water for irrigation.

> "The burden of proof then shifted to the protestant to refute the showing made by proponents. Protestant did not meet that burden."[11]

■ The Director is mistaken. The burden of proof does not shift. There is no affirmative defense in this proceeding. "The burden of presenting evidence to support a fact or position in a contested case rests on the proponent of the fact or position." ORS 183.450(2). The proponents of cancellation have the burden to prove by reliable, probative and substantial evidence, ORS 183.450(5), that Rencken had ceased or

---

[10]
"The right to the use of water may be subject to time limitations in addition to quantity limitations. Traditionally the *surface*-water right has been considered a 'vested right to take and divert from the same source, and to use and consume the same quantity of water annually forever'. But seasonal irrigation rights allow the appropriator to exercise his right during given periods of time and other persons with junior rights may then have superior rights during other periods of time." 5 Clark *supra*, note 9 at 73 (citing *Oliver v. Skinner,* 190 Or 423, 226 P2d 507 (1951)). (Emphasis in original.)

[11] The Director of Water Resources is referring to the two neighboring orchard owners as the proponents of cancellation and designates Rencken as the protestant.

failed to use the water appropriated for a period of five successive years.[12]

We recognize that it could be argued that the Director of Water Resources' error in allocating the burden of proof was not included in Rencken's assignments of error in the Court of Appeals or reasons for review in this court. We hold that the error is properly before this court.

This proceeding is remanded to the Director of Water Resources to re-evaluate the evidence in light of this opinion.

---

[12] In the circuit court the burden of proving the forfeiture of a vested property right is by clear and convincing evidence. *Schlegel v. Hough,* 182 Or 441, 186 P2d 516, 188 P2d 158 (1947). *See also Dunham et ux v. Taylor et al.,* 211 Or 618, 630, 317 P2d 926 (1957); *Graham v. Leek,* 65 Idaho 279, 144 P2d 475 (1943).