Argued and submitted November 25, 2003, affirmed September 15, 2004

# Frank HANNIGAN
## and Dorothy Hannigan,
*Petitioners,*

*v.*

# Patricia HINTON,
## David Hinton
## and Department of Water Resources,
*Respondents.*

## G-60251; A117147

97 P3d 1256

A. J. Schmeits argued the cause for petitioners. With him on the briefs was Silven, Schmeits & Vaughan.

Denise G. Fjordbeck argued the cause for respondent Department of Water Resources. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondents David Hinton and Patricia Hinton.

Richard M. Stephens and Groen Stephens & Klinge LLP filed the brief *amicus curiae* for Eastern Oregon Mining Association.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Petitioners seek review of a final order of the Director of the Oregon Water Resources Department (the director) cancelling petitioners' water rights on the basis of nonuse. Three questions are before us: (1) whether water rights for mining may be lost by forfeiture under ORS 540.610, or may be lost only by application of a common-law abandonment theory, as argued by petitioners; (2) whether use of water at a place different from that designated on the water rights certificate constitutes use that avoids forfeiture under ORS 540.610; and (3) whether substantial evidence supports the director's conclusion that the water rights at issue were not used in the proper place for the designated purpose during the relevant period of time. We agree with the director on all three issues and affirm.

Except as noted, the following facts are undisputed. Petitioners own mining claims on lands to which the water rights at issue are appurtenant, and they claim rights to water designated for use in mining on those claims. Petitioners purchased the mining and water rights at issue in 1987, and the alleged period of nonuse supporting the order of forfeiture was from 1979 to 1986.

The water subject to the disputed rights flows in the Pete Mann Ditch (the ditch), which runs parallel and to the west of U.S. Forest Service Road 1046 for approximately a quarter mile. On the east side of the road is the Geiser Creek drainage, which flows into the Winterville Creek area (Winterville), the area designated for water use on petitioners' water rights certificates. Road 1046 is effectively a barrier between the water to which petitioners have rights and Winterville. Transfer of the water from the ditch to Winterville (via the Geiser Creek drainage) would require that the water leave the ditch and cross Road 1046.

The ditch carries water close to an area known as Parkerville where petitioners apparently also have mining rights. Parkerville is not an area of use designated in petitioners' water rights certificates.

The Water Resources Department (the department) alleged nonuse of petitioners' water rights at the designated

place of use for a period of more than five years, and it proposed cancellation of those rights under ORS 540.610. A hearing was held, resulting in the director's final order determining that the rights were forfeited.

■ In their first assignment of error, petitioners assert that the director erred in applying Oregon's forfeiture statute, ORS 540.610, to water rights designated for mining. We review issues of statutory interpretation for errors of law. *Chaffee v. Shaffer Trucking, Inc.*, 151 Or App 323, 325, 948 P2d 760 (1997). Petitioners argue that the forfeiture statute does not apply to mining water rights and that, as a result, such rights may be lost only by application of the common-law doctrine of abandonment. Abandonment, unlike forfeiture, requires proof of intent to abandon, a showing the department did not make at the hearing. *See Rencken v. Young*, 300 Or 352, 356-57, 711 P2d 954 (1985).

Petitioners reach their interpretation that ORS 540.610 does not apply to mining water rights by improperly limiting the context in which to interpret the statute. Under *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), we interpret statutes by first analyzing the text in context. When viewed in the context of other statutes governing mining water rights, ORS 540.610 likewise governs those rights, with the result that they are subject to forfeiture.

ORS 540.610(1) provides:

"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state. Whenever the owner of a perfected and developed water right ceases or fails to use all or part of the water appropriated for a period of five successive years, the failure to use shall establish a rebuttable presumption of forfeiture of all or part of the water right."

To support their contention that the forfeiture statute does not apply to mining water rights, petitioners begin by pointing out that water rights for mining are authorized in ORS 541.110, which provides:

"The use of the water of the lakes and running streams of Oregon for the purpose of developing the mineral

resources of the state and to furnish electric power for all purposes, is declared to be a public and beneficial use and a public necessity. *Subject to the provisions of the Water Rights Act* (as defined in ORS 537.010), the right to divert unappropriated waters of any such lakes or streams for such public and beneficial use is granted."

(Emphasis added.) ORS 537.010 defines the Water Rights Act:

"As used in this chapter, 'Water Rights Act' means and embraces ORS 536.050, 537.120, 537.130, 537.140 to 537.252, 537.390 to 537.400, 538.420, 540.010 to 540.120, 540.210 to 540.230, 540.310 to 540.430, 540.505 to 540.585 and 540.710 to 540.750."

Petitioners contend that the forfeiture statute, ORS 540.610, is not one of the statutes included in the Water Rights Act and therefore is not one of the provisions to which mining water rights are "subject" pursuant to ORS 541.110.

Although ORS 540.610 is not itself included in the Water Rights Act, portions of the Act, to which mining water rights are clearly subject, incorporate the limitations of ORS 540.610. ORS 537.130 provides that water may be appropriated only when the requirements for a water permit are met.[1] According to ORS 537.250, a certificate for a water right shall issue from the state to the permittee when the application is approved, a permit has issued, and the water right has been perfected by application of the water to beneficial use.[2] The owner of such a certificate then is subject to loss of the certificate "[b]y nonuse as specified and provided in ORS 540.610[.]"[3]

---

[1] ORS 537.130(1) provides that "any person intending to acquire the right to the beneficial use of any of the surface waters of this state shall * * * make an application to the Water Resources Department for a permit to make the appropriation."

[2] ORS 537.250(1) provides:

"After the Water Resources Department has received a request for issuance of a water right certificate * * * that shows, to the satisfaction of the department, that an appropriation has been perfected in accordance with the provisions of the Water Rights Act, the department shall issue to the applicant a certificate * * *."

[3] ORS 537.250(3) provides, in part:

"Rights to the use of water acquired under the provisions of the Water Rights Act, as set forth in a certificate issued under subsection (1) of this

In short, all water rights seekers must apply for a permit, all will be granted a certificate if a permit issues and perfection occurs, and all are subject to forfeiture of that certificate by nonuse as described in ORS 540.610. Accordingly, all water rights, including mining water rights, are subject to the forfeiture provisions of ORS 540.610. *Accord Crandall v. Water Resources Dept.*, 290 Or 771, 777, 626 P2d 877 (1981) (applying ORS 540.610(1) in a forfeiture proceeding for hydropower water rights, which, like mining water rights, are governed by ORS 541.110).

■ Petitioners next argue that, even if their water rights can be forfeited, the use of the water at a location other than the certificated place of use qualifies as "use" that precludes forfeiture of the right under ORS 540.610. They assert that, under the correct legal standard, their water rights have not been forfeited because the water was used during the relevant period at Parkerville. We again review this question of statutory interpretation for errors of law. *Chaffee*, 151 Or App at 325.

As we have already noted, ORS 540.610(1) provides that "[b]eneficial use shall be the basis, the measure and the limit of all rights to the use of water * * *." Rights are forfeited when the certificate holder "fails to *use* all or part of the water appropriated for a period of five successive years." *Id.* (emphasis added). Accordingly, our task is to determine whether use of water on land other than that specified in the certificate constitutes "use" for purposes of ORS 540.610.

In *Hennings v. Water Resources Dept.*, 50 Or App 121, 124, 622 P2d 333 (1981), we held that water use for a *purpose* other than that set forth in the certificate did not constitute "use" that could avoid forfeiture of water rights under a prior version of ORS 540.610. The petitioner in *Hennings* had used the water to wet ground for plowing but not for "irrigation" as designated in the certificate. 50 Or App at 123-24. We noted that "[t]he statutory scheme as a whole

---

section, shall continue in the owner thereof so long as the water shall be applied to a beneficial use under and in accordance with the terms of the certificate, subject only to loss:

"(a) By nonuse as specified and provided in ORS 540.610[.]"

illustrates that the use contemplated must be that of the perfected water right and not some other use." *Id.* at 124. The relevant "statutory scheme" included ORS 540.510 (1979), which, like the current version of ORS 540.510(1),[4] prohibited using water "for a use not authorized by the permit or certificate" without application to and approval of the department. *Hennings*, 50 Or App at 125.

By contrast, in *Russell-Smith v. Water Resources Dept.*, 152 Or App 88, 96, 952 P2d 104, *rev den*, 327 Or 173 (1998), we held that the same forfeiture penalty does not apply to unauthorized changes in *point of diversion*; rather, such actions are subject only to injunctive relief, or civil or criminal penalties. *Id.* at 98. Our conclusion was based on the recognition that Oregon water rights law treats "use" and "point of diversion" as distinct concepts and the forfeiture statute is addressed only to "use." *See id.* at 96. In *Russell-Smith*, we distinguished our application of the forfeiture statute in *Hennings* on the ground that the "type of use" at issue in *Hennings* was a component of "use." *Id.* at 97-98.

We conclude that "place of use" likewise is a component of "use" for purposes of forfeiture. As discussed with regard to "type of use" in *Hennings*, the statutory scheme as a whole illustrates that the place of use contemplated must be that of the perfected water right and not some other place of use. *Cf. Hennings,* 50 Or App at 124. A critical part of that statutory scheme is ORS 540.510(1), which provides, in part:

> "Except as provided in subsections (2) to (8) of this section, all water used in this state for any purpose shall remain appurtenant to the premises upon which it is used and no change in use or place of use of any water for any purpose may be made without compliance with the provisions of ORS 540.520 and 540.530."

Water rights are appurtenant to specific parcels of land; the right to use water is tied to the location on which the water right was perfected ("the premises upon which it is used"), which necessarily is also the location named in the water

---

[4] ORS 540.510 has been amended several times since 1979, but none of those amendments have any bearing on this case. Although the 2003 amendments to ORS 540.510 do not apply here, Or Laws 2003, ch 705, § 137, we cite the current version of the statute because our analysis would be the same under prior versions.

right certificate. *See* ORS 537.250. ORS 540.510, ORS 540.520, and ORS 540.530 set forth a procedure by which a certificate holder may apply to the department for a change in place of use, but petitioners have not received department approval for such a change, nor do they argue that they are subject to any other exception to ORS 540.510(1) (as set forth in ORS 540.510(2) to (8)).

The prohibition contained in the first sentence of ORS 540.510(1), and the limited exceptions to that prohibition found elsewhere in the statute, apply identically to "use" (interpreted to mean "type of use" in *Hennings*, 50 Or App at 124) and "place of use." "Point of diversion" is not included in that prohibition. The next sentence in the statute provides that "the holder of any water use subject to transfer may, upon compliance with the provisions of ORS 540.520 and ORS 540.530, change the use and place of use, the *point of diversion* or the use theretofore made of the water in all cases without losing priority of the right theretofore established." (Emphasis added.) The legislature could have included "point of diversion" in the first sentence of ORS 540.510(1) (as it clearly did in the second sentence), but it chose not to do so. *See Fisher Broadcasting, Inc. v. Dept. of Rev.*, 321 Or 341, 353, 898 P2d 1333 (1995) (applying rule of statutory construction that, by including some things but excluding other things from a statute, legislature intended to exclude the other things from the statute). The fact that "use" and "place of use" are treated identically in ORS 540.510(1), and the fact that ORS 540.510(1) addresses the basic definition of what constitutes a water right, establish that "place of use," like "type of use," is a component of "use" for purposes of the forfeiture statute.

That interpretation also comports with common-law understandings of "use" and "beneficial use" that existed during the early development of the Oregon Water Code. *See State v. Tarpley*, 157 Or App 693, 700, 972 P2d 1201 (1998), *rev den*, 328 Or 465 (1999) (recognizing that context, under the *PGE* analysis, includes "the preexisting common law and statutory framework within which the law was enacted"). The Oregon Supreme Court has held that use of water on premises other than those specified in the certificate is waste. In *Squaw Creek Irr. Dist. v. Mamero et al.*, 107 Or 291, 295,

214 P 889 (1923), the state ordered a water district, which had rights to use water on a particular tract, to discontinue using the water on a different tract. The district refused and sought a declaratory judgment of its right to use the water in other locations. *Id.* at 295-96. The court agreed with the state that failure to use the water on the land to which it was appurtenant, without prior approval of the state water board, "was unlawful and constituted waste." *Id.* at 304.

Waste is the antithesis of "use." *In re Waters of Deschutes River*, 134 Or 623, 665, 286 P 563, *on reh'g*, 294 P 1049 (1930), *appeal dismissed*, 290 US 590, 54 S Ct 83, 78 L Ed 520 (1933) ("wasteful application of water, even though a useful project, * * * is not included in the term 'use' as contemplated by the law of waters"); *Hennings*, 50 Or App at 125 ("unreasonable waste of all or part of the water constitutes 'non-beneficial use' ").[5] Accordingly, unless the statutory procedure for change of place of use is followed, failure to use a water right for five successive years in the certificated place of use constitutes nonuse and results in forfeiture of the right under ORS 540.610.

■    Finally, we address briefly petitioners' claim that the record does not contain substantial evidence to support the director's finding that the water was not used at Winterville during the relevant period. *See* ORS 183.482(8) (findings of fact in agency orders are reviewed for substantial evidence in the record). We conclude without further discussion that there is substantial evidence showing that a necessary component to use at Winterville, *i.e.*, the conveyance of water from the ditch to Winterville, did not occur during the period 1979 to 1986. The record contains substantial evidence that no use of the subject water occurred for mining at Winterville during that period. We note that, although the director also presented an alternative *legal* theory for lack of

---

[5] One of the purposes of the state's water resources program, as declared in ORS 536.310(1), is as follows:

"Existing rights, established duties of water, and relative priorities concerning the use of the waters of this state and the laws governing the same are to be protected and preserved subject to the principle that all of the waters within this state belong to the public for use by the people for beneficial purposes without waste[.]"

use—that petitioners failed to show that they or their predecessors measured or controlled any water diversion—that theory was not necessary to the director's finding, nor is it to this opinion. Therefore we do not address it. The record contains substantial evidence that water to which petitioners had rights was not conveyed to or used at Winterville for mining during the relevant period.

Affirmed.