(No. 7113. December 9, 1943.)

CHARLES E. GRAHAM, Respondent, v. W. W. LEEK, Appellant.

[144 Pac. (2d) 475.]

Rehearing denied January 24, 1944.

Edwin Snow, James and James, and Charles Scoggin for appellant.

Bissell and Bird for respondent.

DUNLAP, J.—As appears from the pleadings, this suit involves a conflict between respondent and appellant over the right to the use of the public waters of Three Mile Creek in Camas County, Idaho, a tributary of Upper Malad River. This creek is also known as Four Mile Creek. However, as appears by the evidence the waters actually involved in the conflict are from the flow of the East Fork or Branch of said Three Mile Creek.

The amount of the flow of the creek is not disclosed by the pleadings or the evidence, but it does appear it is what is known as a "flash" creek, with its run-off from the melting snows in the spring of the year; that the irrigation season is from two to four or five weeks in each year, and that after July 1st there is very little water, if any, for irrigation purposes.

In the first cause of his cross-complaint, appellant claims 3.2 cubic feet per second of time of the water from said Three Mile Creek for the irrigation of certain land owned by him containing 160 acres and referred to in the evidence as the Lenman Tract of land (also referred to as the Lemman and Lemnan Tract), with a priority of April 1, 1907, based upon a decree by the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Lincoln, in the case of *S. C. Frost, et al., plaintiffs, v. Alturas Water Company, et al., defendants*, dated December 13, 1909. The adjudication by this decree, of water to the said Lenman Tract by said court is admitted by respondent. Appellant also claims that upon his application and on or about the 17th day of January, 1939, the Department of Reclamation of the State of Idaho by order of said date, duly transferred said water right so adjudicated by the Frost decree, to the said Lenman tract of 160 acres and to an additional 320 acres. The transfer of this water as pleaded is evidenced by defendant's exhibit No. 2, being a certified copy of the State of Idaho Department of Reclamation

certificate of water right and which certificate was executed on the 4th day of February, 1939.

In the second cause of his cross-complaint, appellant claims a water right of 6.2 cubic feet per second of time of the water of Three Mile Creek, and Willow Creek, in said county, with a priority of May 17, 1907, for the irrigation of 320 acres of property in Camas County, Idaho, referred to in the proceedings as the Thorp tract, also as the Thorpe tract, and bases his claim to this water on water license No. 2759 issued by the State of Idaho to one Arthur C. Thorp, a former owner of the property, dated November 10, 1908, a certified copy of which was admitted into the evidence as defendant's exhibit No. 1. The points of diversion of the water from these creeks are set out in said exhibit, and appellant pleads that said points of diversion had been changed from the points designated in said license, and that at the time of said cross-complaint, one of said points of diversion for the said Thorp tract was on the East Branch of said Three Mile Creek and one point on the West Branch of said Three Mile Creek.

Appellant also claims that continuously during each irrigation season and from the time it became appurtenant to said respective tracts as stated by said cross-complaint, the water so claimed by him was diverted and used on said tracts of land for the irrigation thereof.

Appellant also alleges that respondent claims some right, title or interest in and to the water of Three Mile Creek (or Four Mile Creek) superior to his rights, and that respondent's said claim is without right, and that appellant's right to the use of said water is prior and paramount to the right or claim of respondent, and he asked judgment that he be declared to be the owner of the water so claimed by him and that his said right be declared prior and superior to any right of respondent to the use of said water, and that respondent be restrained and enjoined from obstructing or in anyway interfering with appellant's right to the use of said water on his said land.

In the complaint, respondent asks for the determination of his right to the use as against the adverse claim of appellant of 160 inches of the public waters of Three Mile Creek, in said county, on land belonging to him consisting of 160 acres. He alleged he commenced to divert said water in the spring of 1910 and that he constructed a ditch for the purpose of diversion with a carrying capacity of 160

inches, with a point of diversion in said Three Mile Creek and that by means of said ditch he has irrigated and reclaimed said land, and that since March of 1916 he has been in open, notorious and peaceable possession of said ditch and 160 inches of the water of said creek, and that he has used said water openly, notoriously and continuously for the irrigation of said land for more than five years next preceding the filing of the complaint (March 15, 1941). He alleged the adverse claim to the water by appellant, and asked the court to quiet his title to the use of said water as against the appellant.

The trial court decreed respondent to be the owner of and entitled to the use of 160 inches of the waters of the East Fork of Three Mile Creek, sometimes known as Four Mile Creek, diverted through a ditch and at a point designated in the decree; and that respondent's use and right to the use of the waters aforesaid, and the ditch aforesaid, is prior and superior to any right of appellant to the use of the waters of said stream; appellant and his successors are by said decree specifically enjoined and restrained from, in any manner, interfering with the rights so decreed.

While it appears appellant's claimed dates of priority as to the water for both the Lenman and Thorp tracts antedates respondent's claimed date of priority, it was respondent's theory (not pleaded) that appellant had abandoned the use of water evidenced by the decree and transfer, and he offered evidence to substantiate this theory.

On the question of the abandonment of this water, the trial court made several findings, to-wit:

In finding No. 8, to effect that by the terms of the Frost decree, one E. B. *Lenmon* who was then the owner of said Lenman tract, was decreed, the right to use 3.2 cubic feet per second of time of the water of said creek with a date of priority of April 1, 1907, and that notwithstanding the entry of said decree, no delivery of water thereunder was ever made by the watermaster acting under said decree, from the time of the entry of the decree up to and including the date of the filing of the complaint herein; that notwithstanding the entry of the decree, the said land from the organization of Camas County up to and including the date of the trial hereof, was assessed and taxed as dry land.

In finding No. 9, that from the time of the entry of said decree, until the year 1940, no attempt was ever made by appellant or his predecessors-in-interest, to use or attempt

to use any part of the water of said East Fork of Three Mile Creek on the Lenman land, with the exception of an attempt made to use said water on a tract of approximately ten acres thereof, and that at one time between 1926 and 1936 water was diverted for the irrigation of said small tract of land. That upon said occasion, the plaintiff (respondent) demanded of the predecessor-in-interest of said defendant that said water be uninterfered with, and that upon such demand the waters of the East Fork of Three Mile Creek were released to the respondent.

In finding No. 10 that during the interval between 1926 and 1936, inclusive, the Lenman tract of land was farmed as a dry farm.

In findings Nos. 11 and 12, the court found in effect that upon the application of appellant on or about January 17, 1939, the Department of Reclamation of the state issued an order transferring the place of the use of the decreed rights from the Lenman tract, and that by the terms of said application-order, the use of the water was abandoned upon the Lenman tract to which it had been decreed, and that said order purported to abandon and transfer the water upon the land to which it had been decree, to-wit: the Lenman land and to make it appurtenant to the Lenman land and an additional 320 acres.

It is argued by appellant that his decreed right to the Lenman land is prima facie good as against all of the world, and that this status of his right is recognized by sec. 41-507, I.C.A., which provides that in the administration of the diversion of water from a stream subsequent to a decree, all decreed rights are in time of shortage recognized initially as having priority over other claimed rights. (*Big Wood Canal Company v. Chapman*, 45 Ida. 380, 263 P. 45.) He argues further that in the same manner, that while under the statute just mentioned, water rights evidenced by licenses issued by the Department of Reclamation of the state must in a sense yield to decreed rights, that these water rights evidenced by a license also occupy preferred status in that the license itself is prima facie evidence of water right, the presumption being that such license is valid and duly and regularly issued, and in support thereof cites sec. 41-214, I.C.A. He further contends that where a water right has once been decreed for a tract of land by a final decree, such decree is presumed to remain in effect, citing *Lower Latham Ditch Co. v. Bijou Irrigation Co.* (Colo.) 93 P. 483; *Bam-*

*forth v. Ihmsen,* (Wyo.) 204 P. 345, 356; secs. 41-214, 41-507, I.C.A.; *Basinger v. Taylor,* 30 Ida. 289, 164 P. 522; *Basinger v. Taylor,* 36 Ida. 591, 211 P. 1085.

However, it is well settled that such rights may be abandoned.

Sec. 41-216, I.C.A., as amended, provides in part as follows: "All rights to the use of water acquired under this chapter or otherwise shall be lost and abandoned by failure over the term of five years to apply it to the beneficial use for which it was appropriated, and when any right to the use of water shall be lost through non-use or abandonment, such rights to such water shall revert to the state and be again subject to appropriation under this chapter."

 In construing this section of our statute, this court, in the case of *Albrethsen v. Wood River Land Company,* 40 Ida. 49, 231 P. 418, which was brought to declare a forfeiture of certain water rights, on petition for rehearing, said: "The law safeguards decreed rights as well as other rights by providing that a loss by abandonment can not arise until after a failure to apply the water to a beneficial use for a period of five years, and this intent must be made to appear by clear and convincing evidence. But a decreed right is not immune from a showing that it has been abandoned and such showing does not impeach the decree upon which such right was based, where the evidence received with reference to the abandonment relates to a time subsequent to the decree. To hold otherwise would defeat a well settled rule of public policy that the right to the use of the public water of the state can only be claimed where it is applied to a beneficial use in the manner required by law. We think this statute applies equally to rights to the use of water based upon a decree with that of rights based upon an appropriation and actual use and that such abandonment begins at the time the appropriator claiming under a decree fails to apply the water to a beneficial use. And when such failure continues for the statutory period and the other required conditions are shown to exist, the right may be lost."

 It will be noticed that it is the non-use for five years which works the abandonment. Abandonments and forfeitures are not favored. (*Hurst v. Idaho Iowa L. & R. Co.,* 42 Ida. 436, 246 P. 23.)

In 67 C.J., page 1062, paragraph 529, the rule is stated as follows: "Clear and convincing evidence however, is re-

quired to establish abandonment, adverse use, prescription, or as against a prior appropriator, the development of water; clear and conclusive evidence is necessary to authorize the issuance of a perpetual injunction; and the extent of an appropriation must be proved with certainty."

On the question of appellant's claim to the water for the Thorp tract of land, the court's findings are substantially as follows:

In findings No. 13, the court found that on May 17, 1907, the then owner of the property made a water filing in the office of the State Engineer that the points of diversion mentioned and set out in said application and permit established the points of diversion for the irrigation of said land from the Middle Fork of Three Mile Creek and the West Fork of Three Mile Creek, sometimes known as Willow Creek, or McMahan Creek; that none of said points of diversion headed in the channel of the East Fork of Three Mile Creek, and the diversion of water from said West Fork and Middle Fork did not in any way affect the flow of the water of said East Fork of Three Mile Creek.

In finding 15, that in the summer of 1940 the appellant constructed in said East Fork certain dams and diversion works whereby he, for the first time, attempted to divert the waters of said East Fork for the irrigation of the Thorp land, and that immediately upon the construction of said diversion works, the same were abated by the plaintiff under a claim of right.

All of respondent's land lies below or downstream from the lands of appellant and respondent's claimed point of diversion is below the claimed points of diversion of appellant.

With respect to respondent's claimed right, the court's findings are in effect as follows:

Finding No. 3, that the water was applied to respondent's land by means of a ditch with a carrying capacity of 160 inches; that by means of the ditch, respondent has continuously applied said 160 inches of water for use upon his land and has used the same in producing crops thereon since 1910; that respondent has been in open, notorious and peaceable possession of said ditch and 160 inches of water of the East Fork of said Three Mile Creek since 1916, and has used said water and ditch openly, notoriously and continu-

ously for the irrigation of his land for more than five years last preceding the filing of the complaint.

Finding No. 4, that at all times since the issuance of the patent to respondent's land on the 16th day of March, 1916, the land has been assessed and taxed as irrigated land, and that respondent and his predecessors-in-interest had paid all taxes levied against the said land as irrigated land, since March 16, 1916, up to and including the date of the trial.

In findings Nos. 5 and 6, that said Three Mile Creek, sometimes known as Four Mile Creek, has three branches, namely, the East Fork of Three Mile Creek, the Middle Fork of Three Mile Creek, and the West Fork of Three Mile Creek sometimes known as Willow Creek or McMahon Creek; that the said three forks of said creek flow in a southerly direction roughly parallel to each other, and do not unite or come together for a considerable distance down the creek from respondent's point of diversion; that the diversion of water from the Middle Fork or from the West Fork in no way affects the flow of the East Fork of said Three Mile Creek, and in no way affects the stream flow at plaintiff's said point of diversion in the East Fork of said Three Mile Creek.

Appellant states in his points and authorities, and cites authority to effect, that it is impossible to acquire a prescriptive right merely by diversion and use at a point downstream from the prior appropriator's point of diversion, and in discussing this point he states in his brief, that circumstances can be conceived where a lower appropriator may, by prescription, acquire an upper appropriator's prior rights. This statement seems to be in accord with the established rule, announced by this court in the case of Village of *Fairview v. Franklin Irrigation Co.*, 59 Ida. 7, 79 P. (2d) 531, wherein we said:

"Counsel for Blakely cite authorities to the effect that, in an action to establish title to real estate by adverse possession, such declarations made by the claimant are admissible to show that the possession was hostile and the quality and extent of the interest claimed, etc., (cases) and assert there is no difference in the character of proof required to establish adverse use of the water and that of real estate. Counsel's statement is not strictly accurate. While in each instance the right is established by proof

of hostile possession of another's property, with proof of other attending circumstances, the hostile possession of lands may be shown by proof of 'such acts of ownership and occupancy as are sufficient to "hoist his flag" over the lands, so that all may observe it' (*Collins v. Thode*, 54 Mont. 405, 170 P. 940), and such exclusive possession of necessity ousts the true owner from the land; two parties may at the same time be in possession of water from a creek and neither hold adverse to the other; each may justly claim the right to use the water he is using, without affecting the rights of the other, and therefore, in order to constitute adverse possession of water, *the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water;* the use does not become adverse until it interferes with the use thereof by the prior appropriators, *and therefore proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use.* (Cases.) While the elements of adverse possession of the two classes of property are the same, owing to the difference in their nature, the proof of hostile possession thereof necessarily differs. No error was committed in excluding the offer of proof.' (Italics ours.) (*St. Onge v. Blakely,* 76 Mont. 1, 254 P. 532, 536.) Use must be accompanied with claim adverse to and inconsistent with the adversaries rights and use of the property. (Citing cases.)"

However, in connection with this rule of law as applied to the facts in this case, it must be clearly kept in mind the trial court found that from the time of the entry of the decree until the year 1940 no attempt had been made by appellant or his predecessors-in-interest to use any part of the decreed waters of the East Fork of Three Mile Creek on the Lenman tract, with the one exception which has heretofore been noted, and in respect to the Thorp property that it was not until the year 1940 appellant constructed in the East Fork diversion works and for the first time attempted to divert the waters thereof to said land.

If these findings are sustained by the evidence, the rule announced by us in the case of *Village of Fairview v. Franklin Irrigation Co., supra,* is not applicable here, because if said findings are true, appellant's right as a prior appropriator had ceased to exist long prior to respondent's first use in 1916, which he alleges has continued uninterruptedly.

As has been noted, under the provisions of sec. 41-216, I.C.A., when the right to the use of water has been lost

and abandoned by failure over a term of five years to apply it to the beneficial use for which is was appropriated, and when such right to the use is lost through non-use or abandonment, the right to such use reverts to the state and the water is again subject to appropriation. (*See Albrethson v. Big Wood Canal Co., supra; Chill v. Jarvis*, 50 Ida. 531, 298 P. 273.)

Three principal questions are presented for solution in connection with the findings above referred to. First is the question of the abandonment and non-use by appellant of the waters to which he lays claim out of the East Fork of Three Mile Creek by reason of the decree and transfer and water license. Second, whether or not under the circumstances respondent was required to show that his use of the waters of Three Mile Creek during the period of adverse use as found by the court, deprived appellant of any right which he may have had by reason of being an upstream prior appropriator, and involved in this second question, also, consideration must be given to the third question, that is the source of the particular streams from which appellant diverted waters for the irrigation of the Thorp property and the relation of these points of diversion to respondent's use of the water from the East Fork of this creek.

Appellant pleads the diversion for the Thorp tract as evidenced by the water license (appellant's exhibit No. 1) as being from Three Mile Creek and Willow Creek, and that said points had been changed and that the water for said tract was at the time of his pleading (February 17, 1941), being diverted from two points, one of which was in the East Branch of Three Mile Creek, and one in the West Branch of Three Mile Creek. The date of appellant's change of diversion is not pleaded.

It would therefore appear, under his pleadings, appellant is probably not entitled to have from the East Branch of Three Mile Creek all of the water he is claiming for the Thorp tract. The evidence sustains the finding of the trial court to the effect that the diversion of water from the Middle Fork and the West Fork of Three Mile Creek in no way affects the flow of the East Fork and in no way affects the stream flow at respondent's point of diversion in said East Fork.

A consideration of these questions has required a very careful perusal of the evidence. It is a well established rule of law that where "a trial court sitting as a court of

equity makes findings of fact based upon conflicting evidence, and there is evidence to support both theories of the case and from which reasonable men might draw different conclusions, such findings of fact will not be disturbed on appeal." (*Gore v. Richard Allen Mining Co.*, 61 Ida. 622, 105 P. (2d) 735.)

With this rule in mind, we now come to a consideration of the evidence on the questions heretofore enumerated.

It should first be noted, however, that appellant had the statutory right to change his point of diversion provided that in so doing, rights of others were not injured. (Sec. 41-108, I.C.A., *Basinger v. Taylor*, 30 Ida. 289, 164 P. 522) and such change does not work a forfeiture or is not an abandonment of such right. (*Joyce v. Rubin*, 23 Ida. 796, 130 P. 793.)

On the question of the abandonment of the decreed water right, finding No. 8 of the court, heretofore set out, is in respect thereto, and a portion of this finding is assigned as error by appellant. In his brief, appellant concedes "that there is testimony in the record by certain of respondent's witnesses to the effect that the Lenman tract of land was never irrigated." He attacks this finding, however, on the theory that the testimony in support of the finding is negative in character, and opposed to the positive testimony of his own witnesses that the Lenman tract had been irrigated and calls attention to the rule as announced by this court in the case of *Kerby v. Oregon Short Line Railroad*, 45 Ida. 636, 264 P. 377. See also 20 Am. Jur., page 1039, where it is said: "When, however, a credible witness, with apparently adequate opportunity for observation, testifies to an occurrence, the mere testimony of other witnesses that they were not cognizant of the occurrence, where the opportunities of the latter for observation are not stated, or where it affirmatively appears that their situation was such or their attention was so engrossed that they probably would not have observed the event if it had occurred, or where their opportunities were not coextensive with those of the witness who testifies positively to the occurrence, is entitled to no weight and is not sufficient to create a conflict in the testimony."

It is appellant's contention that the testimony by respondent's witnesses in support of finding No. 8 is all negative due to a lack of opportunity to observe the land during the irrigation season, however, we think that a consideration of

this testimony will not support this conclusion. No useful purpose would be served by reciting the testimony or relating herein in detail the record that bears on the question of whether or not the testimony of respondent's witnesses is negative by reason of a lack of opportunity of observation.

However, we will call attention to the opportunity for observation of the Lenman tract by one of respondent's witnesses, to-wit: Mrs. Bessie Smith, who testified to effect that the Lenman tract had not been irrigated; that Mr. Lenman during the time he was owner of the place had never irrigated it, and that there were no ditches up to the time of the litigation, constructed to that land; that the Lenman tract was grazing land and raised a little wild hay, which grew without irrigation.

It appears that this witness had lived upon a tract of land owned by herself and husband, adjoining the Lenman tract, continuously since the year 1900 up to the time of the trial; that her husband was there prior to that time. Appellant's exhibit No. 3 shows a public road adjoining the Lenman tract leading up to and through the property of these people. Her address is Fairfield, Idaho. It is quite obvious that during the period of her residence on the place she must have traveled this road many, many times. Under those circumstances and considering the fact that this witness lived on the adjoining tract of land, we can hardly conclude that her testimony is negative by reason of her failure of opportunity to observe actual conditions existing on the Lenman tract of land. Other testimony of respondent's witnesses also supported the finding that the Lenman tract had not been irrigated during this period of time.

Appellant's witnesses testified to the contrary, however, the evidence as a whole supports the finding, and in view of the rule above announced from the decision of *Gore v. Richard Allen Mining Company, supra,* we cannot disturb the same, and hold under the circumstances that appellant's first cause of action is not established by the evidence.

We find no merit in appellant's assignment No. 9 attacking the finding, to effect that the Lenman tract of land was from the time of the organization of Camas County up to and including the date of the trial of the cause, assessed and taxed as dry land. In this assignment No. 9 he erroneously refers to this finding as being in paragraph 9 of the findings, when as a matter of fact it is in *paragraph 8* of the findings.

■ Assuming, but not conceding, that the assessment of this property as dry land was not shown for the period of time as stated in the finding, it would not be prejudicial. However, C. H. Leek, who had served as assessor of the county for a period of *23* years, produced his records, which were admitted into the evidence, showing the assessment of this property as such, for a certain period of time (*Plaintiff's exhibit B*). He testified that the assessment record was made by him after an examination of the land, and that the assessments accurately reflected what he found upon such examination. Under this testimony neither was the admission of exhibit B an error, as alleged in appellant's assignment No. 14.

We likewise find no merit in appellant's assignment No. 10 attacking that portion of *finding No. 9* heretofore set out. The most that can be said for appellant in connection with this assignment is that it was based upon a conflict in the evidence. Appellant's witness, Z. W. Pond, on direct examination, testified to the incident of respondent's demand on appellant's predecessor-in-interest that the said water be not interfered with, and he testified that upon this occasion he took no issue with respondent, and peacefully let it go. He was using the water at the time.

In assignment No. 11, error is charged in that portion of finding *No. 10* to effect that during the interval between *1926 and 1936* the Lenman tract was farmed as a *dry farm*. Bessie Smith's testimony, as well as that of other witnesses, supported such finding. Appellant's witnesses testified to the contrary. This comes under the rule above announced with respect to conflict in the evidence.

In assignment No. 12, it is alleged that the court erred in that part of finding No. 12 to effect that by the terms of the order transferring the place of the use of water decreed as aforesaid, to the Lenman tract, said order purported to abandon any part of said water. We find no merit in this contention. It is true it was the purpose of the order to make the water applicable not only to the Lenman tract, but to the additional 320 acres also. Such finding is not prejudicial in view of the fact that the court found on substantial evidence that the use of the water on the Lenman tract had been abandoned.

■ With reference to the findings of the court on appellant's second cause, involving the right of water for the irrigation of the Thorp property, it is appellant's con-

tention that there was applied since *1907* a portion at least, of the decreed waters of the East Fork of the creek to the Thorp property and that there was also applied thereon, the waters evidenced by the water license. As heretofore stated, a portion of this water was diverted from creeks other than the East Fork of Three Mile Creek, and appellant therefore is claiming for the Thorp property water from the East Fork evidenced by the decree and by the license which he alleges and claims was used continuously since 1907. The burden was upon appellant, as cross-complainant, to prove this second cause of action.

As heretofore stated, the court found in finding No. 13, that the points of diversion mentioned and set out in the water permit for the Thorp tract did not include a point of diversion on the East Fork of Three Mile Creek, and this finding is alleged as error in appellant's assignment No. 13. The finding is error as the license places one of the points of diversion in the SW¼ of the SW¼ of section 23, and according to exhibit No. 3, the east prong runs through this quarter-section. However, we do not find this error prejudicial in view of the other findings, one of which is to effect that appellant for the first time attempted to divert the waters of the *East Fork in 1940,* and of the further fact that the *exhibit No. 3* shows that this point of diversion was located some distance down stream and below a culvert crossing the road which is between the creek and the Thorp land, and of the testimony of a number of witnesses to effect that the only means of getting water from the East Fork to the Thorp property across the road, was through this culvert. The evidence sustained the conclusion that the water was not diverted from this particular point of diversion across the road to the Thorp property.

Like the evidence bearing on the facts alleged in appellant's first cause of action, there is considerable conflict in the evidence with reference to the second clause, that is, as to whether or not water was actually diverted and used as claimed, from the East Fork of Three Mile Creek, on the Thorp property.

It is appellant's contention that respondent's witnesses themselves, corroborated his claim of the use of water from this fork on the Thorp land, and to substantiate this claim he relies upon the testimony of respondent and certain of his witnesses, to-wit: Witnesses Von Kresick, Jay Smith, J. L. Johnson, Bessie Smith and George Abbott.

The testimony of these witnesses thus relied upon, is as follows: The respondent was asked: "Q. I will ask you to state whether or not the Thorp land during that period has been irrigated with water taken from the East Fork of Three Mile?" "A. None, with the exception of a little flood water in the spring." Considering respondent's testimony, we must remember that he was testifying as to a period of time covering 30 years.

It will be noted that while respondent acknowledged that there was irrigation by flood water from this East Fork on the Thorp property in the spring, he did not testify as to what particular spring the flood waters were thus used, and in view of the other testimony with reference to the use of flood waters on this property, we do not think it would be unfair to say that the court was not required to draw an inference as to the particular time of the use of this flood water from this testimony. It was appellant's duty to show as a matter of fact, the use of this water as alleged in his cross-complaint, or at least from 1916 on, the period of time that respondent claimed to have been using this water and under the circumstances of the case and in order to defeat respondent's claimed right to prescription by reason of the use of the water five years continuously prior to the filing of the complaint, appellant could have attempted to establish from this witness the fact that the use by him of flood water on the Thorp land in the spring was at least at sometime during this five year period, but a question for this purpose was not asked.

Von Kesrick testified that there was a ditch from the Lenman ranch, East Fork, across the road and across the southeast corner of the west forty and that it watered the Thorp land. However, this statement was made with reference to the year 1919-1920 during which time witness was employed on the Thorp property. He also testified that the irrigation was during the flood season and, also, that about 30 acres of the Thorp property was irrigated from the East Fork in 1919 and 1922. It is, therefore, apparent that his testimony as to this irrigation was confined to the period of time stated.

Witness Jay Smith was employed on the Graham ranch from the summer of 1924 to the fall of 1929. He testified that there was a ditch taken out of the East Fork for the Thorp land but he did not testify that this land was irrigated during the period of time he was familiar with it.

J. L. Johnson testified that he was employed on the E-Y ranch of E-2 ranch, of which the Thorp property was a part, from the spring of 1923 to the spring of 1926 and admitted that at one time while he was there during the first year, water might have been used out of the East Fork for the Thorp property, but he also testified that the ditch filled up and that other water they got for the Thorp property came out of the Middle Fork. Also, on cross-examination, he stated that during this period from 1923 to 1927 he did not remember seeing any water running in the ditch across the road to the Thorp property, except flood water.

Bessie Smith testified that in prior years there was a ditch across the road where they took flood water to the Thorp property, but the only way of getting water from the East Fork was through a culvert. She didn't know how many acres of land was irrigated through the ditch, but it will be noted that the period of time that this flood water was taken off was not established by that testimony, and the use by the witness of the word "prior" might have meant many years before 1916 or many years before respondent's prescriptive use as found by the court.

George Abbott testified that he was acquainted with the Thorp ranch all his life, and that there was a ditch leading out of the East Fork to the Thorp land; that it crossed the road through a culvert and that through this ditch water sufficient to irrigate quite a bit of ground could be obtained; that for quite a time the culvert was broken down and wasn't repaired; that they graded the road and the place where the culvert was, was filled in by the grader. He did not testify as to the use of water through this ditch on the Thorp property.

We do not think it can be said that the evidence of respondent's witnesses above set out, is proof that appellant used from the East Fork water on the Thorp property during the five-year period of adverse use thereof by respondent.

Assignment No. 14 alleges error of the court in not finding and deciding that the Thorp tract had a water right therefor and appurtenant thereto from the East Fork of Three Mile Creek, with a priority of May 17, 1907, evidenced by license No. 2759. The failure to make such finding would not be prejudicial error, since even if such finding had been made, it would not have entitled appellant to prevail inasmuch as the court found in effect that there was a

non-use of water from the East Fork on the Thorp property.

Assignment No. 15 charges the court with error in finding No. 14 to effect that the irrigation of the Thorp property and the diversion of water therefor, in no way interfered with the flow of East Fork of Three Mile Creek. It is undisputed that at least some of the waters for the Thorp tract came from other sources than the East Fork of Three Mile Creek, and in view of the conflict in the evidence on the question as to the use of the water from the East Fork by the respective parties, we cannot hold that this finding of the court is not sustained.

In assignment No. 16, it is charged that the court erred in finding No. 15 to effect that the summer of 1940 was the first time that appellant first acted to irrigate or first irrigated, the Thorp property from the East Fork of Three Mile Creek. Testimony on that point, of course, is conflicting, but there is testimony in the record to that effect given by respondent, and we therefore can not hold that the finding is not sustained.

From what has been said, it of course follows that we must and do hold that the court did not err in finding that respondent's right to the water of the East Fork of Three Mile Creek is superior and prior to the water rights of the defendant, as charged in appellant's assignment No. 2.

This brings us to appellant's assignment No. 1, to effect that the court erred in adjudging and decreeing that respondent is entitled to 160 inches of the waters of the East Fork of Three Mile Creek. We find no evidence in the record to support this conclusion of the court that respondent had beneficially applied to his land the amount of water allotted to him by the court decree.

The evidence totally fails to show the amount of water required for the beneficial use of this tract of land. Both parties have cited to this court authority sustaining the proposition that a decree of a definite water right can not stand where the evidence utterly fails to disclose the amount of water ever at any time diverted and the amount required for the beneficial use to which it is put.

In view of the failure of the evidence in the respects above mentioned, it is apparent that the evidence does not support the decree of 160 inches in favor of respondent. Neither would it have supported in this respect a

decree for appellant as to the amount of water to which he claims, since there was no proof of beneficial use of any definitely ascertained quantity of water.

In the case of *Farmers Etc. Co. v. Riverside Irrigation Dist.*, 16 Ida. 525, 102 P. 481, in syllabi Nos. 7 and 8, of this court, it is said: "The amount of water that a water user and consumer has been in the habit of using and applying to his land can not be accepted as the true test of the duty of water, but the question to be determined in such case is the amount actually necessary for the useful or beneficial purpose to which the water is to be applied. In determining the duty to water, reference should always be had to lands that have been prepared and reduced to a reasonably good condition for irrigation."

In the case of *Reno v. Richards*, 32 Ida. 1, 178 P. 81, this court on local page 15, said: "Water rights are valuable property and a claimant seeking a decree of a court to confirm his right to the use of water by appropriation must present to the court sufficient evidence to enable it to make definite and certain findings as to the amount of water actually diverted and applied, as well as the amount necessary for the beneficial use for which the water is claimed."

And, in the case of *Pabst v. Finmand*, (Cal.) 211 P. 11, the supreme court of California said: "Conceding that a right to the use of a certain quantity of water had been acquired by prescription, it was necessary for defendants to show the quantity of water to which they were entitled. The quantity of water to which a person is entitled by prescription is not determined by the capacity of the ditch, but is limited to the amount applied to a beneficial use; that is, the amount actually used and reasonably necessary for the useful purpose to which the water has been applied. (Citing cases.) * * * Claimants, to gain a right to the use of a definite amount of water must show that the quantity of water awarded them has been actually diverted, that it was applied to a beneficial use, and that the amount claimed was reasonably necessary for such use."

It is therefore apparent that that part of the decree herein adjudging and decreeing respondent's use and right to the water of the East Fork of Three Mile Creek and the ditch conveying same, is prior and superior to the right of appellant, must be and is affirmed, and the cause is remanded to the District Court to ascertain from proper evidence the amount of water from this creek required, and the

amount applied, for the beneficial use of respondent's land.

In view of the conclusion reached, we have decided that each party should pay his own costs on this appeal, and it is so ordered.

Holden, C.J., Ailshie, Budge and Givens, JJ., concur.