809 P.2d 1177

**William I. FEUSTEL and A. Gerilyn Feustel, husband and wife, Plaintiffs–Respondents,**

**v.**

**Lynn STEVENSON, a single man, and Gerald R. Stevenson, Defendants–Appellants.**

No. 18141.

Court of Appeals of Idaho.

April 2, 1991.

James L. Kennedy Jr., Ketchum, for defendants-appellants.

---

Hepworth, Nungester & Lezamiz of Twin Falls, for plaintiffs-respondents. John Hepworth, argued.

SWANSTROM, Judge.

This case involves a dispute between two neighboring landowners over an irrigation pipeline. The issue raised on appeal is whether a judgment of the district court ordering modifications to the pipeline is valid. We affirm the validity of the district court's judgment but remand for an alteration in language.

The background facts, somewhat simplified for the sake of discussion, are as follows. The parties own adjoining rural acreage in Gooding County, Idaho. Natural springs exist on property which now belongs to Lynn and Gerald Stevenson. During the previous century, miners dug a ditch to carry water from the springs to their mining operations. In 1913, landowners along this ditch obtained a decree adjudicating their water rights to the water flowing through the mining company's ditch. *West, et al. v. Bell, et al.*, May 30, 1913, District Court of Gooding County (hereinafter the "1913 Decree"). By 1958 the mining company ditch no longer existed. The Feustels purchased their property in 1968.

In 1976, a dispute arose between the Feustels and Lynn Stevenson over water and ditch rights. The Feustels brought this action contending that Stevenson had destroyed certain ditches or had otherwise deprived them of water that the Feustels had a right to use upon their property as a result of the 1913 adjudication decree. Just before trial of the action was to commence in August, 1978, the parties apparently reached an oral agreement to settle the dispute. The oral agreement was reduced to writing but never signed by the parties.

Nevertheless, in 1978, the district court issued a memorandum decision holding that an agreement to settle had been reached. Based on the agreement, the district court entered a judgment (hereinafter the "1978 judgment") which required Stevenson to build an underground irrigation pipeline across his property, over adjacent state property, and onto the Feustels' property. The pipeline was to be constructed so that it would allow delivery of 12.64 miner's inches of water to Feustels' property from a certain spring located on Stevenson's property, specifically described in the 1913 Decree as "Spring Number eleven." Stevenson built the pipeline, but this failed to end the dispute between the parties. Almost every year since 1978, the Feustels filed motions to require Stevenson to deliver 12.64 miner's inches of water during the irrigation season, contending that Stevenson either was not allowing the required amount of water to enter the system or that the system was not capable of delivering the required amount.

In 1988, the Feustels filed a motion asking the court to order modifications to be made to the irrigation pipeline so that it would provide sufficient water. In reply, Stevenson alleged that the Feustels had wasted the water provided and had not used it beneficially, thus forfeiting their right to most of the 12.64 inches of water decreed to them. *See* I.C. § 42–222; *Graham v. Leek*, 65 Idaho 279, 144 P.2d 475 (1943). Upon a hearing, the district court ordered that modifications be made to the pipeline and declined to change the Feustels' water rights. Stevenson filed this appeal.[1]

Stevenson first contends that the district court's judgment requiring modifications to the irrigation system is invalid because it was based on a motion, untimely by more than ten years, to amend the 1978 judgment. We are not persuaded. While it is true that the Feustels' motion before the court was originally entitled a motion to amend judgment, the Feustels recognized the misnomer and the court subse-

---

1. The order from which this appeal was taken is designated a "judgment." Although it might more properly be termed an order, we will hereinafter refer to it as the "1989 judgment."

quently determined that it was a motion to enforce the 1978 judgment. Unlike the motions previously filed every year by the Feustels to request the court's assistance in making Stevenson turn the water on, this motion sought a more permanent solution to the problem—modifications to a pipeline system that, for one reason or another, was not working satisfactorily. We do not deem the court's action in requiring those modifications to be an improper amendment to the 1978 judgment, but instead one within the court's inherent power to enforce judgments. *See City of Englewood v. Reffel*, 34 Colo.App. 103, 522 P.2d 1241 (1974); *Oatman v. Hampton*, 43 Idaho 675, 256 P. 529 (1927); *Martinez v. Martinez*, 49 N.M. 83, 157 P.2d 484 (1945); 49 C.J.S. *Judgments* § 585 (1947).

■ District Judge Kramer, who took evidence in 1978 concerning the settlement agreement, viewed the parties' agreement as "a contract to deliver water." The parties agreed to split the cost of the pipeline and to divide the maintenance responsibilities. As a result, the Feustels were not given an easement across Stevenson's property. The 1978 judgment made Stevenson responsible for the "maintenance of any fixture or pipeline" on his property. The Feustels were made responsible for the pipeline from the point where it left Stevenson's property to where it connected to the Feustels' "existing irrigation system."

District Judge Becker, who conducted the hearing on the parties' latest annual dispute, could not determine the cause of the failure of the system to deliver 12.64 inches of water to Feustels' property. Each of the parties blamed the other for failing to maintain his part of the system or for violating the terms of the judgment. The court relied heavily on the testimony and on the report of Charles Brockway, a witness both parties readily agreed was a qualified expert on water and water systems. Brockway explained why existing control devices and gauges, coupled with the parties' divided responsibilities and their mutual mistrust, made it difficult for either party to locate the source of problems in the system so that they could be attributed to the proper party for corrective action. This evidence, and the ten-year history of judicial involvement, clearly demonstrated that the trial court would continue to be frustrated in its efforts to enforce the 1978 judgment unless the court ordered changes to be made in the system.

For example, no fixed control devices existed at the inlet end of the pipeline to accurately maintain the water level at a height where hydraulic pressure would cause 12.64 miner's inches to flow out the other end. Instead, Stevenson would adjust the water's height in the intake channel by putting in or taking out rocks in the channel. No gauges existed at the pipe inlet to show whether the water surface was above or below the prescribed level. Even if the water level was set correctly, a screen protecting the inflow could become blocked with debris so as to reduce the flow. It was Stevenson's responsibility to keep debris from blocking or reducing the inflow. The Feustels were not given any easement or permission to do this. Thus, it could not be readily determined by the Feustels or anyone else whether Stevenson was properly controlling the inlet to the pipeline.

The Feustels were responsible for maintaining the lower end of the pipeline after it left Stevenson's property. The evidence showed that the diameter of the pipe was reduced in this area. Sediment could accumulate in a dip of the line causing a reduction in the flow if the line were not periodically flushed out. The line also had a high point or syphon in this area. It was sometimes necessary to bleed air from this high point because the air also could reduce the flow of water. These were the Feustels' maintenance responsibilities. However, if the Feustels experienced a reduction in the flow of water to their property, they could not readily tell whether the problem was in the upper or the lower end of the line. Distrusting Stevenson, they usually assumed he was responsible. Yet, without

access to Stevenson's property, they could not readily determine where the problem was.

Brockway's solution was to have a "sight glass" installed above the pipeline at the point where it left Stevenson's property. This device would show at a glance whether the water level at the inlet of the pipe was at the correct setting to allow a flow of 12.64 miner's inches of water at the outlet. Finally, Brockway recommended that a fixed "Cipolletti weir" be installed at the outlet so that anyone could take a reading and accurately determine the actual flow of water from the pipe, measured in miner's inches. These two devices, used in conjunction, would enable the parties to quickly determine at any given time where a problem existed.

The district court adopted these suggestions, deciding that the parties should equally share the additional cost of their installation. Essentially, the court designated Brockway as a master to accomplish the changes himself or to designate others to do the work under his supervision, to inspect the work, and to certify its completion and cost. We uphold these orders because it is apparent they were reasonably necessary to enable the court to enforce the 1978 judgment fairly and in a manner that will reduce the chances for another decade of litigation.

▇ We have more difficulty, however, in the wording used by the district court in upholding the Feustels' water right. In its 1989 judgment ordering modifications to the existing pipeline, the district court stated that the Feustels were entitled "to receive through the pipeline ... a *continuous* flow of water of not more *or less than* 12.64 miner's inches." (Emphasis added.) We believe this language is a material change from the following language of the 1978 judgment:

> That the defendant, Lynn Stevenson, shall provide and deliver a quantity of water not to exceed 12.64 miner's inches of water through the said pipeline for the beneficial use of the plaintiffs.

> That the plaintiffs shall demand no greater quantity of water than can be beneficially used, either for irrigation or otherwise, so as to make any excess supply of water available for the beneficial use of the defendants. However, plaintiffs shall determine the amount of water that may be put to beneficial use at any point in time, not to exceed 12.64 miner's inches. The plaintiffs shall notify either the defendant, Lynn Stevenson, his agents, or employees that an amount of water in excess of that required, is being furnished when the situation so justifies in order that defendant, Lynn Stevenson, his agents, or successors can use said water beneficially at such times as plaintiffs are not so beneficially using the same.

These provisions were amended by a subsequent stipulation of the parties in 1978. The stipulation recites that "the plaintiffs' water use outside the irrigation season shall be limited to a maximum of four inches for stock water and fire protection." Clearly, the Feustels are not given an absolute right to receive a "continuous" flow of "not less than" 12.64 inches of water even during the irrigation season. The judgment unequivocally prohibits the Feustels from demanding a greater quantity of water "than can be used beneficially, either for irrigation or otherwise, so as to make any excess supply of water available for the beneficial use of the defendants."

The 1978 judgment gives the Feustels the right to "determine the amount of water that may be put to beneficial use at any point in time, not to exceed 12.64 miner's inches," but this language must be read in context and not in a manner that will nullify the rights given to Stevenson in the same paragraph. The question whether the Feustels are actually using the water beneficially is subject to review as a mixed question of fact and law. We see nothing in the 1978 judgment which adjudicates this question or forecloses an inquiry into it.

The memorandum decision which the district judge issued following the January,

1989, hearing indicates that the judge believed that the *necessity* of using the full 12.64 inches of water for irrigation and other beneficial purposes on the Feustels' property was somehow established by the 1978 judgment. We disagree. Nothing in the 1978 judgment suggests such a determination. Neither does the memorandum decision of the court which preceded the judgment. At most, the judgment can be interpreted to mean that, based on the settlement agreement of the parties, Stevenson had a duty to provide the amount of water the Feustels requested, within the separate limits set for the irrigation season and for the non-irrigation season, with the burden falling on Stevenson to show that Feustel was not using all of the requested water beneficially. While the judgment placed the burden of persuasion on this issue upon Stevenson, the judgment did not create any presumptions that the court had found it was "necessary" for the Feustels to employ a greater amount of water per acre than allowed by I.C. § 42–220.

Because we believe the district judge misconstrued Stevenson's burden on this issue, and because the language used in the 1989 judgment purporting to grant a perpetual right in the Feustels to thereafter receive "a continuous flow of water of not more or less than 12.64 miners inches," is at odds with the language and intent of the 1978 judgment, we vacate paragraphs "1" and "2" on page two of the 1989 judgment. We affirm the other provisions which we hold are necessary to carry out and enforce the 1978 judgment.

Given the uncertainty of the evidence showing the actual amount of water delivered to the Feustels prior to the 1989 irrigation season, we leave it to the district court to determine whether anything can be gained by relitigating the question whether they have beneficially used the available water. The court may justifiably avoid this determination until the system is shown to perform as intended. The court may decide that this issue can best be decided in the forum of the Snake River Adjudication proceedings now under way. We remand the case for further proceedings consistent with this opinion. Because we determine that neither party has clearly prevailed in this appeal, we decline to award costs or fees on appeal to either party.

WALTERS, C.J., and SCHILLING, J., Pro Tem., concur.