Argued and submitted September 24, 1997, affirmed January 7, petition for review denied May 19, 1998 (327 Or 173)

Joann RUSSELL-SMITH,
*Petitioner,*

*v.*

WATER RESOURCES DEPARTMENT,
Cecil Wade, Myra Wade,
Dennis Bangs and Zeoleate Bangs,
*Respondents.*

(PC 96-5; CA A95766)

952 P2d 104

Charles F. Lee argued the cause for petitioner. With him on the brief was Lee & Kaser, P.C.

Jas. Adams, Assistant Attorney General, argued the cause for respondent Water Resources Department. With

him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Doyle Schiffman argued the cause and filed the brief for respondents Dennis Bangs and Zeoleate Bangs.

No appearance for respondents Cecil Wade and Myra Wade.

Before De Muniz, Presiding Judge, Deits, Chief Judge,* and Haselton, Judge.

HASELTON, J.

* Deits, C. J., *vice* Richardson, S. J.

**HASELTON, J.**

Petitioner seeks review of a final order of the Director of the Water Resources Department dismissing a proceeding to cancel the individual respondents' water right on the basis of nonuse. ORS 540.610(1). The dispositive question is whether a holder of a water right who (1) takes water from the authorized source but (2) does so from an unauthorized point of diversion has "fail[ed] to use all or part of the water appropriated," triggering forfeiture of the water right. ORS 540.610(1). The Director concluded that there was no forfeiture in those circumstances. We agree and affirm.

Except as noted, the following facts are undisputed: In 1961, petitioner Joann Russell-Smith (Russell-Smith) and her late husband acquired water rights for domestic use at two residences they owned on adjoining properties in Douglas County. The couple lived in the residence on the northern parcel, lot 4, and rented the residence on the southern parcel, lot 5, until a fire destroyed the rental residence in 1977. A single water right certificate was issued for both parcels.[1]

The certificate authorized diversion of water from an "unnamed spring," and identified with particularity the point of diversion (POD) from which the owner of the water right would be authorized to take water from that source. The authorized POD was not located at the origin of the spring but, instead, was some distance downstream from the spring and was approximately 500 feet south of both lots 4 and 5 on land managed by the Bureau of Land Management. From 1977 to the present, water was captured at the authorized POD in a collection box. Overflow from the collection box, as well as water flowing from springs located both above and below the collection box, flowed into an intermittent stream that ran north past the residence on lot 5 and then flowed west and between the residences.

---

[1] The original water right certificate incorrectly identified the property appurtenant to the water right as only lot 5 rather than lots 4 and 5. A corrected certificate was issued in January 1995. However, even though a single water right certificate was issued for both lots 4 and 5, only that portion of the water right that is appurtenant to lot 5 is at issue here. No party has alleged nonuse of the water right appurtenant to lot 4.

In 1978, after her husband died, Russell-Smith sold a portion of lot 5, including the portion of the lot where the rental residence once stood, to Forrest and Doris Moore, retaining an easement for her water line. The Moores resided on the property in trailers, which were located close to the site of the original rental house.

Although the Moores apparently, and incorrectly, thought that they held no right to use water from the unnamed spring, they did appropriate water from the intermittent stream into which water from the unnamed spring spilled. The Moores dug a hole in the bed of the stream, downstream from both the unnamed spring and the collection box, and appropriated water from that hole using a hose. They used the water for gardening and other household uses.

The Moores sold the property to respondents Dennis and Zeoleate Bangs in 1986, who also resided on the property in trailers and other outbuildings. The Bangs used water for household purposes from the same hole dug by the Moores in the bed of the intermittent stream.

In 1979, Russell-Smith moved away from lot 4. Her son, Rodney Russell, lived in the residence on that lot until 1991, when he sold the residence and lot 4 to Cecil and Myra Wade. In February 1995, the Wades sold lot 4 to S. Jeanette Stookey.

In early April 1996, Stookey, the current owner of lot 4, filed documents with the Water Resources Department evidencing nonuse of the water right appurtenant to lot 5, and requested cancellation of that portion of the 1960 water right appurtenant to lot 5.[2] Among the documents Stookey filed in support of her claim of forfeiture were affidavits from Russell-Smith, her son, Russell, the Moores, and the Wades. Those affidavits provided evidence of nonuse of the water right appurtenant to lot 5 from 1977 through 1994.[3]

---

[2] Stookey also requested that the canceled water right from lot 5 be reissued to her for domestic use on lot 4. The Water Resources Department responded to Stookey by letter, indicating that, if the water right appurtenant to lot 4 was indeed forfeited by nonuse, water laws prohibited the transfer of that water right to her. *See* ORS 540.610.

[3] In fact, one affidavit alleged nonuse from 1960. However, due to a Water Resources Department policy of accepting only corroborated allegations of nonuse,

On May 1, 1996, a Water Resources Department administrative law judge (ALJ) sent respondents Bangs, as the owners of lot 5, a "Notice of Proposed Partial Cancellation of Water Right" based on the evidence submitted by Stookey. *See* ORS 540.610. The Bangs filed a protest to the proposed partial cancellation of water rights and attached affidavits asserting that water on the property had been used for domestic purposes by them and their predecessors in interest, the Moores, from 1979 through 1996.

A contested case hearing was held on August 30, 1996. Thereafter, the ALJ issued a proposed order that determined that the portion of the water right appurtenant to lot 5 had not been forfeited due to nonuse.

Petitioner filed an exception to the proposed order, arguing that several of the ALJ's findings of fact were not supported by substantial evidence. The only exception that is pertinent to our review was the following finding:

"From 1979 to the present, the residents of Lot 5, the property in question, annually appropriated water from th[e] intermittent spring-fed stream, *as well as from the spring box proper*, for domestic and livestock purposes." (Emphasis supplied.)

Petitioner argued that the emphasized aspect of the finding—*i.e.*, that the residents of Lot 5 annually appropriated water from the spring box—was unsupported by substantial evidence. In particular, she contended that the evidence showed only that the residents appropriated water from the intermittent stream. Petitioner further contended that diversion from the stream did not constitute "use" of the water in accordance with the certificate and, thus, the findings of fact that suggested otherwise were in error.

On November 26, 1996, the Director of the Water Resources Department issued her final order. The Director denied the exceptions to the proposed order and found that, because there was no five-year period of nonuse of the water appurtenant to lot 5, the water right had not been forfeited.

that allegation of nonuse from 1960 through 1977 was not considered. Petitioner does not assign error to the Director's failure to consider the evidence of nonuse from 1960 through 1977.

The Director adopted the ALJ's findings of fact in their entirety and, in response to petitioner's exceptions, added a conclusion of law:

"Where water has been used from the proper source, on the correct lands, for the authorized purpose, diversion at an unauthorized point of diversion does not constitute failure to use the waters appropriated and will not serve as the basis for a finding of forfeiture."

On review, petitioner raises three assignments of error. In her first assignment, she renews her assertion that one of the findings of fact, *see* 152 Or App at 92, was not supported by substantial evidence in the record. *See* ORS 183.482(8)(c). In her second assignment, petitioner contends that the Director erred in concluding that appropriation of water from an unauthorized POD cannot serve as the basis for a finding of forfeiture. In her third assignment, petitioner asserts that the Director erred because she did not modify respondents' water right to reflect the quantity of water actually used from 1977 through 1994.

With respect to the first assignment of error, we agree that the Director's finding that respondents and their predecessors "annually appropriated water * * * from the spring box proper" was not supported by substantial evidence. Thus, the record does not demonstrate that respondents or their predecessors actually took water from the *designated* POD during pertinent periods. Nevertheless, that error is not dispositive—and, indeed, may be immaterial—depending on our disposition of the second assignment of error, which challenges the Director's legal conclusion that taking water from the designated source, but at an unauthorized POD, does not trigger forfeiture. If the Director is correct in that regard, it makes no difference whether respondents took water at the POD designated in the certificate (the spring box), so long as they continued to take water from the authorized source for the authorized use.

In considering the second assignment of error, we begin by outlining the statutory scheme. The forfeiture statute, ORS 540.610(1), provides:

"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state. Whenever the

owner of a perfected and developed water right *ceases or fails to use* all or part of the water appropriated for a period of five successive years, the failure to use shall establish a rebuttable presumption of forfeiture of all or part of the water right. Thereafter the water which was the subject of use under such water right shall revert to the public and become again the subject of appropriation in the manner provided by law, subject to existing priorities." (Emphasis supplied.)

ORS 540.510(1) forbids a water right holder from changing his or her use or place of use of the water except in accordance with the procedures of the statute:

"[N]o change in *use or place of use* of any water for any purpose may be made without compliance with the provisions of ORS 540.520 and 540.530. However, the holder of any water use subject to transfer may, upon compliance with the provisions of ORS 540.520 and 540.530, change the *use and place of use*, the *point of diversion* or the use theretofore made of the water in all cases without losing priority of the right theretofore established." (Emphasis supplied.)

ORS 540.520 establishes the procedure for an authorized change in a POD:

"[W]henever the holder of a water use subject to transfer for irrigation, domestic use, manufacturing purposes, or other use, for any reason desires to change the place of use, the point of diversion, or the use made of the water, an application to make such change, as the case may be, shall be filed with the Water Resources Department[.]" ORS 540.520(1) (emphasis supplied).

ORS 540.530 establishes the standard for the approval or denial of a requested change of a POD:

"If, after hearing or examination, the Water Resources Commission finds that the proposed change can be effected without injury to existing water rights, the commission shall make an order approving the transfer[.]" ORS 540.530(1) (emphasis supplied).

It is clear that, under ORS 540.520, a certificate holder who wishes to change the POD designated in the certificate shall file an application with the Water Resources Department. *See* ORS 540.520(1); *Huff v. Bretz*, 285 Or 507,

518, 592 P2d 204 (1979) ("Although ORS 540.510 *et seq.* do not *expressly* prohibit the changing of one's point of diversion without making application to the Water Resources Director, we believe that it is clearly implied from these provisions that a person shall *not* change his point of diversion *unless* he files such an application and complies with the procedures set forth in ORS 540.520 and 540.530."). It is also clear that, under ORS 540.610(1), the "failure to use" water for five years will result in a forfeiture of that right. It is not clear, however, whether taking water from the designated source but from an unauthorized POD can result in forfeiture. ORS 540.610 makes no mention of points of diversion. It refers only to "use" and "failure to use."

Citing ORS 540.510(1) and *Huff v. Bretz*, petitioner contends that a water right holder can legally change his or her point of diversion *only* by complying with the statutory procedures of ORS 540.520. Petitioner further suggests that "failure to use" means failure to use in exact accordance with the water right certificate and that using an unauthorized POD constitutes "failure to use." Consequently, petitioner asserts, the penalty for failing to comply with the statutory procedure for changing one's POD, and for appropriating water from an unauthorized POD, is forfeiture.

Respondents counter that neither the forfeiture statute, ORS 540.610, nor any other statute provides that the consequence of failing to comply with the statutory procedure for changing one's POD is forfeiture of the water right. Respondents contend that "[t]he key issue in forfeiture for non-use is use," (emphasis in original) and that here, the Bangs and their predecessors *used* the water in accordance with the water right certificate. Thus, respondents reason, the critical consideration under ORS 540.610(1) is not the POD but, rather, whether the water was diverted from the authorized source and was used for the authorized purpose.

The issue presented here has been addressed in at least two decisions of the Water Resources Department, and in both instances, the Director determined, in somewhat conclusory fashion, that the use of an unauthorized POD cannot form the basis for a finding of forfeiture. *See In the Matter of Cancellation of a Water Right in the Names of Clarence H.*

*Oxman and Frank C. Oxman to use the Waters of Willow Creek*, vol 32, 544 (1979); *In the Matter of Cancellation of a Water Right in the Name of Blue Mountain Ditch Company for Waters of John Day River*, vol 34, 136 (1980). However, neither decision was reviewed by this court. Thus, the issue is, for us, one of first impression.

■ The resolution is by no means clear-cut. Nevertheless, we conclude that there is no forfeiture under ORS 540.610 when a water user uses water from the designated source, and for designated purposes, but from an unauthorized POD, for the statutory forfeiture period.

That conclusion, which comports with the law of most other western states, flows from four considerations, which we explain below: (1) Oregon's water rights laws treat "use," "beneficial use," and "point of diversion" as distinct concepts. (2) The forfeiture statute, ORS 540.610, focuses on, and speaks exclusively of, "use" and "beneficial use," without any reference to "point of diversion." (3) Although other statutes do address unauthorized changes in point of diversion, none refers to forfeiture as a consequence or remedy. (4) Under the statutory scheme, the lack of forfeiture does not mean that certificate holders can engage in unbridled and disruptive changes in points of diversion. Rather, certificate holders who effect unauthorized changes in PODs are subject to substantial sanctions, including civil penalties and, in appropriate cases, criminal sanctions.

Oregon's water rights laws treat "use" and "point of diversion" as distinct concepts. *See, e.g.*, ORS 540.510(1) ("the holder of any water use subject to transfer may, upon compliance with the provisions of ORS 540.520 and 540.530, change the use and place of use, the point of diversion or the use theretofore made of the water[.]"); ORS 540.520(1) ("[W]henever the holder of a water use subject to transfer * * * desires to change the place of use, the point of diversion, or the use made of the water, an application to make such change * * * shall be filed[.]").

Conversely, the forfeiture statute, ORS 540.610, focuses on, and refers exclusively to, "use" and "beneficial use." The statute does not, by its terms, refer to "point of

diversion," much less to unauthorized changes in points of diversion. That silence is unsurprising, given that the statutory antecedent to the present forfeiture statute was enacted in 1913,[4] 14 years before the legislature enacted the antecedent to the present ORS 540.510 and ORS 540.520, governing procedures for changing PODs.[5] Further, not only were there no statutory or administrative procedures governing changes in PODs in 1913, but Oregon law at that time explicitly acknowledged that "[a] change in the point of diversion and place of use may be made when it can be done without prejudice to the rights of others." *Whited v. Cavin*, 55 Or 98, 106, 105 P 396 (1909). *See also Williams v. Altnow*, 51 Or 275, 297, 95 P 200 (1908) (same). Thus, nothing suggests that the legislature, in enacting the forfeiture statute, intended an unauthorized change of POD to give rise to a forfeiture.

The exclusive focus of ORS 540.610(1) is on "use" and "beneficial use." *Accord Hennings v. Water Resources Dept.*, 50 Or App 121, 124-25, 622 P2d 333 (1981) (where

---

[4] Or Laws 1913, ch 279, § 1, provided:

"Beneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state, and whenever hereafter the owner of a perfected and developed water right shall cease or fail to use the water appropriated, for a period of five successive years, the right to use shall thereupon cease, and such failure to use shall be conclusively presumed to be an abandonment of such water right, and thereafter the water which was the subject of use under such water right shall revert to the public and become again the subject of appropriation in the manner provided by law, subject to existing priorities[.]"

In *Rencken v. Young*, 300 Or 352, 361, 711 P2d 954 (1985), the court noted that, notwithstanding the statutory reference to "abandonment," it "is a forfeiture statute." Thereafter, the legislature amended ORS 540.610(1) substituting "a rebuttable presumption of forfeiture of all or part of the water right" in place of the former conclusive presumption of "abandonment."

[5] General Laws of Oregon 1927, ch 219, § 1, provided:

"All water used in this state for any purpose shall remain appurtenant to the premises upon which it is used and no change in use or place of use of any water for any purpose may be made without compliance with the provisions of this act; provided, that the owner of any water right may, upon compliance with the provisions of this act, change the use and place of use, the point of diversion or the use theretofore made of the water in all cases without losing priority of the right theretofore established. Whenever the owner of a water right for irrigation, domestic use, manufacturing purposes, or other use, for any reason desires to change the place of use, the point of diversion, or the use theretofore made of the water, an application to make such change as the case may be shall be filed with the state engineer * * *."

certificate holder failed to use water for designated purpose and, instead, engaged in unauthorized use, forfeiture was appropriate).[6] Nothing in the subsequent enactment of statutes governing changes in PODs altered that focus. The statutes do not refer to forfeiture as a possible consequence of an unauthorized change in POD. Nor did the legislature subsequently amend the forfeiture statute to include, in addition to the existing references to changes in "use," a reference to changes in PODs. In sum, although a variety of statutes address procedures and requirements for changing PODs, none suggests, much less states, that forfeiture may be a consequence of noncompliance.[7]

The absence of a forfeiture mechanism does not mean, however, that certificate holders may change PODs willy-nilly, with potentially chaotic results. Oregon's water laws provide for the imposition of substantial sanctions against users who fail to comply with statutory procedures or the terms of their certificates. In the event of an unauthorized change of POD, the watermaster is empowered to order the certificate holder to resume taking water from the authorized point. *See, e.g.,* ORS 540.045(1)(a). In addition, a certificate holder who effects an unauthorized change of POD may be subject to substantial civil penalties, *see* ORS 536.900(1)(a), to arrest, *see* ORS 540.060, and, if an unauthorized change is "to the detriment" of other persons, to criminal penalties, including imprisonment of up to six months. *See* ORS 537.990.

---

[6] Here, in contrast to *Hennings v. Water Resources Dept.*, 50 Or App 121, 622 P2d 333 (1981), there is no assertion that forfeiture is warranted because the water was not used for the purpose specified in the certificate, *viz.*, "domestic use."

[7] Petitioner asserts that ORS 540.510(1) implies that an unauthorized change in POD may trigger forfeiture. That statute states that the holder of a water right "may, upon compliance with the provisions of ORS 540.520 and 540.530, change the * * * point of diversion * * * in all cases without losing priority of the right." However, the statute does not provide that the opposite is true—*i.e.*, that a holder of a water right will lose priority (through forfeiture) if he or she does not comply with the statutory procedures.

Petitioner's position is further weakened by the fact that the preceding sentence in ORS 540.510(1), "no change in use or place of use of any water for any purpose may be made without compliance with the provisions of ORS 540.520 and 540.530," does not refer to changes in PODs.

Given the totality of the statutory scheme, we conclude that if, as here, a certificate holder makes an unauthorized change of POD but continues to use water from the designated source in the designated amount and for the designated use, there is no "failure to use" within the meaning of ORS 540.610(1).[8] Our conclusion comports with the law of other states that have considered similar questions. Although water rights vary from state to state, the predominant weight of authority from other western states is that an unauthorized change in POD does not effect a forfeiture. *See Wells A. Hutchins,* 1 *Water Rights Laws in the Nineteen Western States,* 630 (1971). *See, e.g., Graham v. Leek,* 65 Idaho 279, 144 P2d 475, 482 (1943) ("[A]ppellant had the statutory right to change his point of diversion provided that in so doing, rights of others were not injured * * * and such change does not work a forfeiture or is not an abandonment of such right."); *Van Tassel Real Estate & Live Stock Co. v. City of Cheyenne,* 49 Wyo 333, 54 P2d 906, 910, *cert den* 299 US 574 (1936) ("[I]f the water is actually used by change of the point of diversion, there is no nonuser of the water. * * * In fact, it has been held that even a change of diversion not in compliance with a statute will prevent the application of the rule of nonuser. * * * And such change was made, we think, in the case at bar."); *Ward County Water Improvement Dist. No. 3 v. Ward County Irr. Dist. No. 1,* 237 SW 584, 588 (Tex Civ App 1921), *mod* 117 Tex 10, 295 SW 917 (1927) (rejecting the defendants' contention "that the plaintiff forfeited its alleged prior right by changing its headgate without authority of the

---

[8] Petitioner's reliance on *Huff v. Bretz,* 285 Or 507, 592 P2d 204 (1979), and *Vandehey v. Wheeler,* 13 Or App 25, 499 P2d 1319 (1973), is misplaced. Those cases are materially distinguishable. In *Huff,* the issue was not forfeiture, but whether the defendant lessee had breached a real property lease by refusing to follow the plaintiff lessor's instructions to use an unauthorized POD. The court concluded that the defendant's refusal to act in violation of ORS 540.510 and ORS 540.520 did not constitute a breach of the lease. In *Vandehey,* the plaintiffs sought declaratory and injunctive relief against Water Resources officials to restrain them from requiring the plaintiffs to repair a dam. A statute required that the owner of a water right construct and maintain a measuring device at the point of diversion. The plaintiffs argued that they were not required to maintain the dam at their authorized point of diversion but were only required to maintain a measuring device at their unauthorized, or actual, point of diversion, which was farther downstream. The court held that the plaintiffs could not change their point of diversion by declaratory judgment action; they were required to follow the statutory procedure, and were not entitled to a declaratory judgment or injunctive relief.

board of water engineers of the state. The statute fixes a penalty, but does not forfeit water rights in such instances."). *But see State v. Fanning,* 68 NM 313, 361 P2d 721, 723 (1961) (unauthorized change in well location effected a forfeiture of a groundwater right).

Respondents did not forfeit their water rights due to the unauthorized change of POD. Consequently, petitioner's second assignment of error fails.

■ In her third assignment of error, petitioner argues that the Director erred because she did not modify the water right appurtenant to lot 5 to reflect the water actually used in a five-year period. Petitioner urges us to hold that (1) the water right appurtenant to lot 4 has priority over the water right appurtenant to lot 5; (2) the water right appurtenant to lot 5 can only be satisfied from the surplus water not needed under the water certificate for lot 4; or (3) the point of diversion for the water right appurtenant to lot 5 should be changed to reflect the actual point of diversion, the intermittent stream on lot 5.

Petitioner did not seek modification of the water right in the proceedings before the Department. Rather, the sole issue there was forfeiture. Because petitioner's present contentions were not raised and preserved before the agency, we will not consider them for the first time on judicial review. *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 380, 823 P2d 956 (1991).

Affirmed.